# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| HOUSE OF RAEFORD FARMS OF LOUISIANA LLC | CIVIL ACTION NO. 19-271 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LANCE POOLE, ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are two motions to dismiss, one filed by Defendants L&S Food Sales ("L&S") and Alan Singer ("Singer") and the second filed by Defendant Hector Perez ("Perez"). [Record Documents 136 and 137].  The Defendants assert that the claims brought against them by the Plaintiff, House of Raeford, must be dismissed for failure to state a claim upon which relief may be granted.  Plaintiff opposes the motions to dismiss, and the matter is now ripe for review.  Based on the following analysis, the motions to dismiss are GRANTED IN PART and DENIED IN PART.  Because the Court agrees that Plaintiff has not adequately pled its claims of fraud, those claims will be dismissed. In addition, any stand-alone claim of honest services fraud is dismissed. However, Plaintiff's conspiracy and Louisiana Unfair Trade Practices Act claims have been adequately pled and will survive the motions to dismiss.

## Background

This case has been brought against fifteen defendants, many of whom are unrelated to each other, and it encompasses a number of different alleged fraudulent schemes.  This opinion will only address in detail the three Defendants at issue in the instant motions to dismiss—L&S, Singer, and Perez—and the specifics of the fraudulent

1

scheme that has been alleged against them.   Singer is the owner of L&S, while Perez is or was an L&S employee.  Record Document 125, p. 20.

House of Raeford is a poultry producer that operates poultry processing facilities. It sells chicken parts to market buyers through either annual contracts or through daily sales based on the current market price.  Record Document 125, p. 5.  There are two types of chicken sales involved in the instant case:  premium parts, which are the breasts and thighs, and chicken frames, which is what remains after the breasts, thighs, wings, and legs have been removed.

At all relevant times, Defendant William Ross Hickman ("Hickman") was the sales manager of Plaintiff's Arcadia, Louisiana facility.   As the sales manager, Hickman "negotiated contracts for the sale of all poultry products on behalf of [Plaintiff], supervised the transportation and shipment departments in Arcadia, Louisiana, and sold any excess fresh and frozen commodity chicken on a daily basis."  Record Document 125, p. 5. According to Plaintiff, in January of 2011, while acting as Plaintiff's sales manager, Hickman secretly formed his own company, Heritage Food Sales.  Id. at 6.  This company lies at the heart of many allegations in this case.   Hickman's wife, Angela Hickman, managed the day-to-day activities of Heritage Food Sales, including drafting and cashing checks for the business, and her email account was used for business purposes.  Id. at 8 & 21.

Heritage Food Sales acted as a broker, purchaser, and seller of chicken products that originally came from Plaintiff.  In broad terms, Hickman is alleged to have brokered deals with many of the fifteen Defendants in this case whereby the Defendant companies

purchased chicken parts from Plaintiff at beneficial pricing.  Those companies then sold the chicken back to Hickman via Heritage Food Sales, and Heritage Food Sales ultimately sold the chicken to the end buyer.  The Defendant companies thus acted as pass-through entities, often never taking physical possession of the chicken, but rather purchasing it from Plaintiff (via Hickman) at a lower price and then reselling it to Heritage Food Sales (via Hickman) at a higher price, with both the pass-through company and Hickman profiting from the deal.

From the Court's understanding of the second amended complaint, the allegation against L&S (and by extension Singer and Perez) is not that L&S was a pass-through entity as described above, but rather that Hickman provided L&S with preferential pricing for chicken sales, and in return L&S paid Heritage Food Sales, i.e., Hickman, a "portion or percentage of each purchase it made" from Plaintiff.   Id. at 21. Plaintiff contends that between 2011 and 2018, Hickman and L&S engaged in a scheme to defraud Plaintiff by

> enter[ing] into secret transactions hidden from Raeford Farms that would allow Raeford Farms' employee, Hickman, to earn money to which he was not entitled, at the expense of Raeford Farms.  In exchange, Hickman used his position at Raeford Farms to give L&S preferential or favorable treatment beyond that which it was entitled based on the amount paid to Raeford Farms.

Id. at p. 21.  The scheme divulged Plaintiff's "confidential and proprietary information, including pricing information . . . ," which was allegedly used by L&S to its "benefit and to Raeford Farms' detriment."  Id. Between 2012 and 2018, Plaintiff submits that L&S, Singer, and Perez sent Heritage Food Sales seventy-eight checks totaling $579,248.50.  Id. at 22.

These were, it alleges, bribery or kickback payments[1] made in exchange for Hickman giving L&S "preferential treatment, favorable terms, and inside, confidential information . . . ." Id. at 23.  Although the second amended complaint does not allege much about the scheme's pricing structure, it suggests that the scheme was designed to provide L&S with preferential pricing, which presumably resulted in less profits to Plaintiff.

Plaintiff contends that as the owner of L&S, Singer had "direct and personal knowledge" of this agreement and personally participated in the negotiations which led to the agreed-upon kickback amount.  Id.  Further, Plaintiff asserts that Singer approved of the payments and personally signed all seventy-eight checks to Heritage Food Sales. Id. at 24.  Meanwhile, Perez allegedly also personally participated in the negotiations wherein the kickback amount was determined, and he worked with Hickman to "develop[] the scheme and the kickback/bribery amounts, . . . [and] conceal the true nature of the agreement and transactions . . . ."  Id. at 25.  Hickman allegedly emailed Perez the confidential and proprietary information pertaining to Plaintiff's business.  In return for his assistance in the scheme, Perez was able "to secure preferential contract terms and/or treatment for his employer, which, upon information and belief, resulted in increased salary and/or benefits." Id. at 26.

Plaintiff's  claims  against  L&S,  Singer,  and  Perez  include  fraudulent misrepresentation, fraudulent concealment, conspiracy, violation of the Louisiana Unfair

---

[1] Plaintiff generally refers to the payments as "bribery payments or kickback payments," without squarely settling on either category.

Trade Practices Act ("LUTPA"), negligence, and unjust enrichment.[2]  All three Defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  In their motions to dismiss, the Defendants attack the fraud, LUTPA, and conspiracy claims.  These claims will be addressed in turn, below.  The Defendants did not seek dismissal of the Plaintiff's negligence and unjust enrichment claims, and therefore this ruling will not analyze those claims.

## Law and Analysis

### I.      Federal Rule of Civil Procedure 12(b)(6) Standard.

Federal Rule of Civil Procedure 8 requires a short and plain statement of the claim showing the pleader is entitled to relief.  A complaint is not required to contain detailed factual allegations, however, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal marks and citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2008) (internal marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  See Iqbal, 556 U.S.

---

[2] To the extent Plaintiffs intended to set forth a stand-alone cause of action for honest services fraud, such claim is dismissed for the reasons explained in Record Document 90.

5

at 678.   This plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully."   Id.   However, the complaint cannot be simply "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." Id.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.   See Twombly, 550 U.S. at 555-56.

As the Fifth Circuit has explained, in order to survive a 12(b)(6) motion, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Rios v. City of Del Rio, 444 F.3d 417, 420–21 (5th Cir. 2006) (internal marks and citation omitted).  Moreover,

> a statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief.  The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint.  Further, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.

Id. at 421 (internal marks and citations omitted).  A court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.  Neitzke v. Williams, 490 U.S. 319, 327 (1989).

## II.   Pleading Requirements for Fraud Claims

To survive a motion to dismiss, allegations of fraud must "state with particularity the circumstances constituting fraud," although "intent [and] knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b). "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule

6

12(b)(6)." United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 901 (5th Cir. 1997).  As it must when considering an ordinary 12(b)(6) motion, a court evaluating a motion to dismiss on Rule 9(b) grounds must accept all of the plaintiff's factual allegations as true. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2009). Nevertheless, the heightened pleading requirement of Rule 9(b) is an "additional burden" that exceeds the general requirement that a plaintiff's allegations "state[] a legally cognizable claim that is plausible." Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter, 607 F.3d 1029, 1032, 1034 (5th Cir. 2010) (per curiam).

Rule 9(b) protects defendants' reputations from being harmed by unsupported allegations of fraud. Guidry v. Bank of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992). In light of this policy, the Fifth Circuit "interprets Rule 9(b) strictly," Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 564 (5th Cir. 2002), and therefore requires a plaintiff to allege the "who, what, when, where, and how" of the fraud, Benchmark Elecs. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003).  To do so successfully, it must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997). The lack of specific information on any of these elements is fatal to a fraud claim. See, e.g., Kreway v. Countrywide Bank, FSB, 647 F. App'x 437, 438 (5th Cir. 2016) (per curiam) (dismissing fraud claim based on alleged forgery when complaint specified neither identity of forger nor time, place, and manner of execution); Dawson v. Bank of Am., N.A., 605 F. App'x 263, 266 (5th Cir. 2015) (per curiam) (dismissing fraud allegations despite complaint's emphasis on the

"purportedly 'malic[ious],' 'unconscionable,' and 'predatory' nature of the Bank's conduct" when complaint failed to specify the particular circumstances surrounding the alleged fraud); United States ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 385 (5th Cir. 2003) (dismissing fraud claim based on defendant's alleged misrepresentation of a commitment to provide services when plaintiff failed to "allege when or how this commitment was made or who at Humana made it"); Williams, 112 F.3d at 178–79 (dismissing fraud claim because complaint did not state the place or time of the alleged misrepresentations); but see, e.g., Benchmark Elecs., 343 F.3d at 724 (finding fraud allegations sufficient when complaint described the specific statements that were fraudulent, when they were made, the persons who made them, and "why the various assertions [we]re fraudulent or misleading").

## III.   Fraud Claims

Because the Court is sitting in diversity, the elements of fraud that Plaintiff must allege are determined by state law. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S. Ct. 2211 (1996).  Louisiana Civil Code article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."  La. Civ. Code art. 1953.  Under Louisiana law, delictual fraud, or the tort of fraud, has three elements: "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury."  Becnel v. Grodner, 2007-1041 (La. App. 4 Cir. 4/2/08); 982 So. 2d 891, 894 (citing Newport Ltd. v. Sears Roebuck & Co., 6 F.3d 1058, 1068 (5th Cir. 1993)).

8

Because the requirements of Rule 9(b) apply with equal force when evaluating whether state law causes of action alleging fraudulent conduct have been sufficiently pleaded, Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008), each of these elements must be alleged with the requisite degree of specificity.

Here, despite alleging fraudulent misrepresentation, Plaintiff's second amended complaint does not identify misrepresentations that any of these three Defendants made in the course of the alleged scheme.  Instead, Plaintiff argues that L&S, Singer, and Perez knew of the scheme, worked with Hickman to conceal the scheme, and participated in the scheme for their own gain.  Plaintiff alleges that during all the years the scheme existed—2011-2018—the Defendants knew some of the Plaintiff's executives and corporate officers or could have discovered their identities, and that they "failed to communicate Hickman's actions to Raeford Farms' CEO, CFO, president, or other corporate officers."  Record Document 125, p. 28. Thus, it is clear to the Court that Plaintiff's claim under article 1953 is founded on an allegation that the Defendants *suppressed* the truth and committed fraud by silence or inaction, rather than through an affirmative misrepresentation.

Under Louisiana law, "[t]o find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information."  Greene v. Gulf Coast Bank, 593 So. 2d 630, 632 (La. 1992).  "[C]ertain special relationships," like a fiduciary relationship, "will give rise to a duty."  Id.  A fiduciary relationship is one in which "confidence is reposed on one side and there is resulting superiority and influence on the other."  Plaquemines Parish Comm'n v. Delta Dev. Co., 502 So. 2d 1034, 1040 (La. 1987).  The "duty imposed on a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary

9

of all facts which materially affect his rights and interests." Id.  The Supreme Court has explained that "[o]ne is said to act in a fiduciary capacity when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other." Scheffler v. Adams & Reese, LLP, 2006-1774 (La. 2/22/07); 950 So. 2d 641, 647 (quoting State v. Hagerty, 205 So. 2d 369, 374 (La. 1967)).

Here, the second amended complaint fails to plead facts that would establish a relationship between the parties that would give rise to a fiduciary duty.  Indeed, Plaintiff's second amended complaint does not allege that as a customer of Plaintiff, L&S (or those acting on its behalf) owed Plaintiff a fiduciary duty, or *any* duty for that matter.  Plaintiff has essentially conceded that no fiduciary relationship existed.  Nonetheless, it argues that Defendants had a duty to speak based on an exception to the general rule requiring a fiduciary relationship.[3]  It submits that this exception, recognized by Louisiana courts, "imposes a duty to speak when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed."  Record Document 146, p. 21.  The Court will examine the applicability of this exception to determine whether any of the Defendants owed Plaintiff a duty to speak.

---

[3] Plaintiff identifies two exceptions, but only relies on one of those.  Record Document 146, pp. 20-21.

In <u>Bunge Corp. v. GATX Corp.</u>, the plaintiff argued that GATX, the builder of a grain storage tank for Bunge, was negligent in failing to warn that the tank would rupture under certain conditions during ordinary usage.  <u>Bunge Corp.</u>, 557 So. 2d 1376 (La. 1990). The Louisiana Supreme Court was tasked with determining whether post-sale, GATX had a duty to warn Bunge if it acquired knowledge that a hazardous condition existed in the ordinary usage of the tank.  <u>Id.</u> at 1378.  The Court explained that under Louisiana Civil Code articles 2315 and 2316, there is liability for acts of commission or omission that cause damage to another if there is a breach of a duty imposed by the relationship of the parties. <u>Id.</u> at 1382. Noting the transition away from the doctrine of "caveat emptor," which favored freedom of contract, the court stated, "[m]odern law, therefore, imposes a duty to speak whenever justice, equity, and fair dealing demand it."  <u>Id.</u> at 1383.  The court further explained that

> It has long been held that the duty to disclose exists where the parties stand in some confidential or fiduciary relation to one another, such as that of principal and agent or executor and beneficiary of an estate. Contracts, such as those of suretyship or guaranty, can also impose such a duty. More recently, courts have tended to impose a duty when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed. The existence of this duty is a legal question. Relevant factors include whether the obligation is being imposed on a seller, who is more likely to be required to disclose; the importance of the fact not disclosed; the relationship of the parties; and the nature of the fact not disclosed. For instance, in contracts for sale, if the vendor conceals an intrinsic defect not discoverable by reasonable care, there is a much greater likelihood of the existence of a duty to disclose the non-discoverable and intrinsic defect than there would be to disclose something extrinsic such as a fact likely to affect market value.

<u>Id.</u> at 1383–84.  The court held that once a builder has obtained knowledge of a hazard, it has a duty to disclose.  <u>Id.</u> at 1386-87.

Fully aware of this "exception" to the general rule requiring a fiduciary relationship, the Louisiana Supreme Court nonetheless held two years later in <u>Greene v. Gulf Coast Bank</u> that a bank did not have a duty to disclose a borrower's troubled financial condition before allowing a shareholder to guarantee the borrower's loans. <u>Greene</u>, 593 So. 2d at 633. The Court held that there was no fraud from silence or suppression of the truth because there was no duty to disclose in the first place. <u>Id.</u> Typically, there is no independent duty of care owed by a bank to a depositor, as it is a debtor-creditor relationship. <u>Id.</u> at 632. However, under "certain special circumstances, such as a fiduciary relationship between the bank and depositor," a duty may be created. <u>Id.</u> In <u>Greene</u>, the shareholder relied on his own expertise and familiarity with the industry in deciding to guarantee the loans and chose to invest his money "without further independent investigation." <u>Id.</u> at 633. Thus, the Court found that when he made the decision to invest, the shareholder "was in a position to know as much as or more than the Bank about the financial condition of the company of which he was a major stockholder and officer." <u>Id.</u> Hence, "[t]here was no special relationship between the parties that would give rise to a duty to disclose." <u>Id.</u> at 632.

Thus, <u>Greene</u> establishes that a duty to speak may be imposed where a fiduciary relationship exists, while the <u>Bunge</u> exception imposes on manufacturers and vendors a duty to speak (to warn of hazards inherent in the ordinary use of property), notwithstanding the absence of a fiduciary relationship. The <u>Bunge</u> duty arises when a condition or defect in property poses a risk to health and safety, and it is a risk that is "not

within reach of diligent attention, observation and judgment." Bunge, 557 So. 2d at 1384. With that understanding, the duty established under Bunge is inapplicable here.

Plaintiff is unable to demonstrate how the Bunge line of cases establishes a duty to disclose that would permit it to gain relief on these facts.  Indeed, the only case cited by Plaintiff weighs against its position.  It argues that First American Bankcard Inc. v. Smart Business Technology, Inc., 178 F. Supp. 3d 390 (E.D. La. Apr. 12, 2016), acknowledged a greater duty to disclose stemming from Bunge.  This case is inapposite, however.  In First American Bankcard, the court analogized the defendants' status to that of "craftsmen, artisans, and builders," whom Louisiana courts have traditionally held "to a high standard of accountability for the product of their workmanship."  178 F. Supp. 3d at 402.  It was that heightened status that imposed on the defendants the Bunge duty to speak. The Defendants in the instant case cannot be similarly analogized to craftsmen, builders, vendors, or manufacturers held to a higher standard.  Rather, they were the Plaintiff's customer.  Their status as a customer cannot impose on them the duty to speak under Bunge.

The Plaintiff has not identified a case in which special circumstances existed to create a duty to disclose in the context of a seller-buyer relationship where the buyer is held to owe the duty to the seller.  Indeed, "fiduciary duties do not arise from ordinary supplier-customer contracts."  Wilson v. Mobil Oil Corp., 940 F. Supp. 944, 955 (E.D. La. 1996).  The Court holds that the Bunge exception is inapplicable.

Because Defendants did not have a duty to disclose, the Plaintiff's fraud claim fails. As such, the Court need not analyze the remaining elements of fraud under Louisiana law.

The Defendants' motions to dismiss Plaintiff's fraud claims are granted.  Accordingly, the Plaintiff's claims of fraud, including fraudulent misrepresentation and fraudulent concealment, against L&S, Singer, and Perez are dismissed for failure to state a claim.

## IV.    LUTPA Claim

A.    Prescription.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. R.S. § 51:1405.  LUTPA is governed by a one-year statute of limitations period. La. R.S. § 51:1409(E).  In light of various courts' uncertainty about whether the statute was peremptive or prescriptive, in August of 2018, the Legislature amended the statute to read: "The action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action."  Id. LUTPA's limitations period is prescriptive, not peremptive, and is subject to interruption or suspension, including under the doctrine of contra non valentem.  "*Contra non valentem non currit praescriptio* means that prescription does not run against a person who could not bring his suit." Wells v. Zadeck, 2011-1232 (La. 3/30/12); 89 So. 3d 1145, 1150.  The Louisiana Supreme Court "has recognized that the doctrine of contra non valentem is used to soften the occasional harshness of prescriptive statutes."  Id.   There are four recognized circumstances under which contra non valentem may be applied to prevent prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause

14

of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. These categories allow the courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled.

Id. at 1150 (internal marks omitted).

Although prescription is an affirmative defense, a Rule 12(b)(6) motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint. Potier v. JBS Liberty Sec., Inc., No. 6:13-CV-00789, 2014 WL 5449726, *3 (W.D. La. Oct. 24, 2014).  Therefore, "[a] Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense." Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977).  Here, Defendants urge the Court to find that Plaintiff's LUTPA claim is prescribed.  Generally, the party urging prescription bears the burden of proof on the issue.  Taranto v. La. Citizens Prop. Ins. Corp., 2010-0105 (La. 3/15/11); 62 So. 3d 721, 726.   "However, if the petition is prescribed on its face, then the burden of proof shifts to the Plaintiff to negate the presumption by establishing a suspension or interruption." Id.

In the instant case, Plaintiff's second amended complaint has an entire section devoted to allegations regarding the timing of its discovery of the schemes at issue.  See Record Document 125, p. 34.  It alleges that on February 5, 2019, it filed suit against Defendants Lance Poole ("Poole") and Group 7792 in Bienville Parish.  Id. This suit was premised upon Poole's and Group 7792's failure to pay certain shipping costs.  Id.  Through discovery in the state case, Plaintiff hired a certified fraud examiner and ultimately uncovered Hickman's various schemes.  Id.  Plaintiff contends that the acts set forth in its second amended complaint, particularly those allegations relating to the Defendants'

15

collective efforts to conceal the schemes and fraud from Plaintiff, prevented it from discovering its causes of action until 2019. Based on this assertion, it appears that the third basis for contra non valentem applies in this case: Plaintiff was not aware of the claims in this case due to the Defendants' efforts to conceal the agreements, the scheme, and the payments.

Poole and Group 7792 removed the Bienville Parish case to this Court on March 3, 2019. Record Document 1. Plaintiff filed its first amended complaint on December 17, 2019, in which it named L&S, Singer, and Perez as Defendants. This complaint contained the LUTPA claim and was brought within one year of Plaintiff learning of its claims. Record Document 33, p. 28. Accordingly, based on the allegations of the second amended complaint, which the Court must take as true, the Court finds that Plaintiff's LUTPA claim is not time-barred, and Defendants' motion to dismiss on that basis is without merit.

B.    Sufficiency of the Claim.

The only remaining argument Defendants present with respect to dismissal of the LUTPA claim is equally unavailing. They urge that the LUTPA claim is based upon fraudulent misrepresentations and is subject to dismissal under Rule 9(b) for the same reasons the Court dismissed the Plaintiff's other claims of fraud. Defendants do not devote serious attention to this argument, contending only that the Plaintiff

> has failed to state claims for fraud or misrepresentation or conspiracy. Those factual allegations, or lack of them, are the same allegations supporting the LUTPA claims. This is fatal to the LUTPA claim, which must be dismissed. To the extent [Plaintiff] seeks to base the claim on any alleged omissions or silence, the claim similarly fails because [Plaintiff] has failed to allege a duty to disclose . . . .

16

Record Document 136-1, p. 17; <u>see also</u> Record Document 137-1, pp. 12-13.   This

contention relies on the Defendants' representation to the Court that Plaintiff has alleged

only a "deceptive trade practice," and that under Louisiana law, deception equates to

fraud, misrepresentation, or deceit.[4]   Because Plaintiff cannot prove fraud, Defendants

posit, the LUTPA claim must be dismissed.

The Defendants have mischaracterized the Plaintiff's claim, and for that reason,

their argument is unpersuasive.   Plaintiff's second amended complaint clearly alleges a

LUTPA claim of "*unfair* and deceptive trade practices," which is a broad summarization of

the various actions committed by the Defendants, as outlined in the complaint.

Defendants' intentional and misplaced focus on the word "deceptive," to the exclusion of

the word "unfair," is misleading, as the terms deceptive and unfair have different legal

imports under LUTPA jurisprudence.

"[W]hat constitutes an unfair trade practice is determined by the courts on a case-

by-case basis," as the statute does not specify particular violations.  <u>Zeigler v. Hous. Auth.</u>

<u>of New Orleans</u>, 2012-1168 (La. App. 4 Cir. 4/24/13); 118 So. 3d 442, 453.   "[T]he range

of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud,

misrepresentation, and similar conduct, and not mere negligence."  <u>Quality Env't Processes</u>

<u>v. I.P. Petroleum Co.</u>, 2013-1582 (La. 5/7/14); 144 So. 3d 1011, 1025.   "Specifically, to

---

[4] The Defendants' briefing also relies on the implication that "fraud" and "deceit" are synonymous under LUTPA jurisprudence and that if Plaintiff has no claim of fraud under article 1953, then there is also no deceit for LUTPA purposes.  The Defendants do not address this inquiry directly and cite no precedent to support their conclusion that fraud and deceit are one and the same.  Because the LUTPA claim ultimately survives, the Court need not address this inquiry at this stage.

17

establish that a defendant's business actions were 'unfair,' the plaintiff must demonstrate that they offended 'established' public policy and were 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' " Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1332 (5th Cir. 1994) (quoting Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am., 522 So. 2d 1362, 1365 (La. App. 2 Cir. 1988)).  "Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA." Quality Env't Processes, 144 So. 3d at 1025.  Only "egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." Cheramie Servs., Inc. v. Shell Deepwater Prod., 2009-1633 (La. 4/23/10); 35 So. 3d 1053, 1060.  In order to prove a violation of LUTPA, Plaintiff must show: "(1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss." Who Dat Yat LLC v. Who Dat? Inc., 2011 WL 39043, *3 (E.D. La. Jan. 4, 2011).

As previously stated, Defendants' motions focused primarily on prescription.  They provided very little meaningful analysis of the sufficiency of the LUTPA allegations. Particularly, they made no effort to acknowledge the jurisprudence that holds that unfair practices are sufficient under LUTPA and that fraud is not a necessary element of a LUTPA claim.  Further, the Defendants' motions do not analyze, much less address, any aspect of Plaintiff's LUTPA claim, aside from fraud.  In other words, their motions do not argue the claim could not be validly premised upon unfair practices, or even deceptive practices. In short, they narrowly focused their sights on fraud, to the exclusion of everything else.

18

A review of the second amended complaint reveals that Plaintiff has alleged sufficient facts to support a LUTPA claim at this stage of the proceedings.  Accordingly, Defendants' motions to dismiss the LUTPA claim are denied.

**V.    Conspiracy Claim**

Plaintiff's second amended complaint lodges a conspiracy claim against L&S, Singer, and Perez for "all damages caused by their actions set forth herein, including Hickman's intentional acts of fraud, fraudulent misrepresentation, fraudulent concealment, unfair trade practices, and breach of fiduciary duty."  Record Document 125, p. 39.  Defendants seek to dismiss the conspiracy claim, contending that because the fraud claims against them have been dismissed, then the conspiracy claim likewise fails.  The Defendants' argument is without merit.

Louisiana Civil Code article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."  La. Civ. Code art. 2324(A).  Civil "conspiracy by itself it not an actionable claim under Louisiana law."  Crutcher-Tufts Res., Inc. v. Tufts, 2007-1556 (La. App. 4 Cir. 9/17/08); 992 So. 2d 1091, 1094.  "The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part."  Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co., 2014-0323 (La. App. 4 Cir. 10/1/14); 151 So. 3d 670, 676.  "Civil conspiracy is not a substantive tort in Louisiana; the concept is relevant only to the distribution of quantum after liability is determined."  New Orleans Jazz & Heritage Found., Inc. v. Kirksey, 2009-1433 (La. App. 4 Cir. 5/26/10); 40 So. 3d 394, 408.  In order to prove a

conspiracy, a plaintiff must establish that: (1) there was an agreement to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in the plaintiff's injury; and (4) there was an agreement as to the intended outcome or result.  Jeff Mercer, LLC v. State through Dep't of Transp. & Dev., 51,371 (La. App. 2 Cir. 6/7/17); 222 So. 3d 1017, 1024.

In the instant case, the thrust of the Defendants' argument is that they are not subject to liability under article 2324 because the fraud claims against them have been dismissed.  That proposition, however, rests on a fundamental misunderstanding of article 2324, as well as the law of conspiracy.  Within a conspiracy, each actor is not required to commit the underlying illegal or tortious act.  Rather, it is the *agreement* to commit those acts that makes one liable in a conspiracy, even if he did not perform the violative act(s) himself.  That is, each actor need not be independently liable for the underlying violation.  "[N]othing in Article 2324 or the case literature requires that each co-conspirator equally participate in, let alone wholly commit, each element of the underlying intentional tort."  Currier v. Entergy Servs., Inc., 2014 WL 4450360, *2 (E.D. La. Sept. 10, 2014); see Chrysler Credit Corp. v. Whitney Nat'l Bank, 51 F.3d 553, 557-58 (5th Cir. 1995) (explaining that because there was a stipulation that one party was liable for conversion of proceeds, the court did not need to determine whether the co-conspirator defendant was also liable for conversion; rather, it need only decide whether that defendant conspired with the guilty party to convert the funds).

Hence, to impose conspiracy liability under article 2324, the Court is not required to find that L&S, Singer, and Perez have *each* committed each element of the underlying

20

intentional tort.  Rather, it must be established that each Defendant agreed with others to commit the tort and that one or more of the conspirators then committed the act, resulting in the Plaintiff's damages.  Thus, even if these three Defendants themselves did not perpetrate fraud under article 1953, that in no way means they are not liable for conspiring with another to commit fraud.

Furthermore, Defendants have once again narrowly focused on fraud to the exclusion of any other underlying tort.  Even if it was found these Defendants did not conspire with another to commit fraud, there could still be an alternative basis for conspiracy liability because other claims, i.e., other underlying torts, have been alleged against them.  As such, even if all fraud allegations were dismissed against all Defendants, the conspiracy claim could not be dismissed as long as other underlying torts remain in this suit, both as against these three Defendants and as against the remaining twelve Defendants.  The Court cannot and will not assess the merits of the case at this time. Suffice it to say that multiple claims exist against multiple Defendants.  Because there is a possibility that Plaintiff may recover either against these three Defendants or against another Defendant, with whom it could be determined that these Defendants conspired, Plaintiff's claim for conspiracy remains viable.   Therefore, the Defendants' motions to dismiss the conspiracy claim are denied.

## Conclusion

For the foregoing reasons, the Defendants' motions to dismiss [Record Documents 136 and 137] are **GRANTED IN PART** and **DENIED IN PART**.  The motions are **granted** insofar as they seek the dismissal of the Plaintiff's fraud claims, including

fraudulent misrepresentation, fraudulent concealment, and honest services fraud.  Those claims are **dismissed with prejudice**.  The motions to dismiss are **denied** in all other respects.

      **THUS DONE AND SIGNED** this 18th day of March, 2021.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE