UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HOUSE OF RAEFORD FARMS OF LOUISIANA, LLC | CIVIL ACTION NO. 19-cv-271 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LANCE POOLE, ET AL | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

**Introduction**

House of Raeford Farms of Louisiana, LLC ("Raeford Farms") operates a poultry processing plant in Bienville Parish. It alleges that two of its former employees, William Ross Hickman and Brian Whiteman, engaged in fraudulent transactions with several outsiders that cost Raeford Farms millions of dollars. Raeford Farms' Second Amended and Restated Complaint (Doc. 125) names as defendants William Hickman and his wife Angela Hickman, Brian Whiteman, and alleged sham company Heritage Food Sales, LLC (collectively, the "Hickman Defendants"). It also names as defendants 11 companies or individuals who are alleged to have participated in various fraudulent schemes with the Hickman Defendants.

Before the court is a Motion to Sever (Doc. 141) filed by S&S Trading, LLC, James Baxter, Roger Franklin Baxter, and Donald Vaughn (collectively, the "S&S Defendants"). The movants argue that they have been misjoined because the case is made up of distinct claims arising out of different transactions against unrelated defendants. They ask that the court sever the claims against them and require Raeford Farms to pursue the S&S

Defendants in a separate lawsuit. Raeford Farms contends that it has properly joined all defendants, but it asks that if the court does sever this suit into multiple actions that the Hickman Defendants remain parties in each suit. William and Angela Hickman object to what they contend would be claims-splitting that would require them to defend multiple lawsuits.

**Relevant Allegations**

The severance issues must be considered based on the allegations in Raeford Farms' Second Amended and Restated Complaint (Doc. 125). Raeford Farms alleges that it is a poultry producer that owns and operates a number of processing facilities in the southeast United States. In 2008, it hired William Hickman as its sales manager for the Arcadia, Louisiana facility. Brian Whiteman was the assistant sales manager. The men negotiated contracts for the sale of poultry products from Raeford Farms to various customers. The facility sold premium poultry products, such as boneless breasts and thighs, which are generally contracted for on a yearly basis at a fluctuating market price. It also sold chicken frames, which is the core of the chicken that is left after the breast, thighs, wings, and legs are removed, which are generally contracted for on a yearly basis at a fixed price. ¶¶ 5-14.

In 2011, Hickman formed Heritage Food Sales, LLC, which he used as a front or cover so that he could purchase chicken products in the name of that company and receive kickback and bribery payments through the company, which appeared to otherwise provide a legitimate service. Hickman and his wife conspired together to operate Heritage Food Sales in a manner that defrauded Raeford Farms. The schemes took multiple forms, including the use of pass-through entities, the payment of kickbacks and bribes to Hickman,

and causing Raeford Farms to pay commissions and other compensation to entities that did not earn them. When Mr. Hickman sat for a deposition, he invoked the Fifth Amendment more than 125 times. ¶¶ 15-33.

Raeford Farms' complaint divides the various schemes into three categories. The first is described as a chicken frame scheme that involved Group 7792, Inc., Lance Poole, and the S&S Defendants. Raeford Farms alleges that the chicken frame scheme began with the S&S Defendants and lasted from approximately 2012-2017, and Hickman "subsequently replaced S&S Trading's status as a pass-through entity with Group 7792 and Poole in 2017." ¶¶ 34-35.

There is no allegation that the S&S Defendants and Group 7792/Poole conspired or coordinated together or had any form of relationship. It appears that Hickman began the scheme with the S&S Defendants and later switched to running the same or substantially similar scheme through Group 7792/Poole. This is relevant because Raeford Farms proposes that, if the claims against the S&S Defendants are severed, the Group 7792/Poole defendants be placed in the same suit. The S&S Defendants object to being in the same suit with those defendants. They argue that there is no alleged relationship between the defendants, the alleged schemes are different in nature because Lance Poole was a member of Heritage Food Sales beginning in 2018, the claims against the Group 7792/Poole defendants include a unique claim for over $2.4 million in transportation costs, and both Poole and Group 7792 have been defaulted. See entry of default at Doc. 22.

Raeford Farms alleges that Hickman arranged for S&S Trading (and later Group 7792) to buy chicken frames from Raeford Farms and then immediately resell the frames

to Hickman's company, Heritage Food Sales, at a higher amount than the pass-through entities paid to Raeford Farms. The price spread was generally between one and two cents per pound, which was a substantial amount given the millions of pounds of product sold. Heritage Food Sales would then sell the chicken frames to the end user or an exporter for a profit. The pass-through entities never even took possession of the chicken frames. Hickman and S&S Trading split the wrongful proceeds, and Raeford Farms alleges that S&S Trading received 274 checks from Heritage Food Sales that totaled more than $16 million. ¶¶ 36-59.

Hickman negotiated a similar contract in 2018 between Raeford Farms and Group 7792. It provided that Group 7792 would purchase frames from Raeford Farms at 12 cents per pound for the year. Hickman negotiated a deal on behalf of himself or Heritage Food Sales to immediately purchase those same frames from Group 7792 at a higher price, with Group 7792 never taking possession of the frames. Hickman/Heritage Food Sales then resold the frames to a different entity for 16 cents per pound, and the participants split the proceeds. Hickman also used his position as sales manager to maximize the profits made by himself and his trading partners by deceptively coordinating to have freight costs paid by Raeford Farms instead of the purchaser. Raeford Farms alleges that in 2018 it suffered a loss of more than $2,400,000 as a result of Hickman's deceptive actions and scheme with Group 7792 and Poole. Bribes, kickbacks, and brokerage fees for rebates were also involved in the schemes. ¶¶ 60-81.

The Hickman Defendants and the Group 7792 Defendants reside in north Louisiana. The S&S Defendants are located in southeast Texas. The next scheme described in the complaint involves the L&S Defendants, who reside in Massachusetts.

Raeford Farms alleges that L&S Food Sales Corp and principals Alan Singer and Hector Perez purchased premium chicken products from Raeford Farms through a Hickman scheme that lasted from 2011 through 2018. Hickman emailed the L&S Defendants confidential and proprietary information, including Raeford Farms' pricing information. L&S Food Sales paid Hickman a percentage of each purchase it made from Raeford Farms, which it did by issuing checks to Heritage Food Sales. Raeford Farms alleges that L&S Food Sales sent 78 checks totaling more then $579,000, which it describes as bribery or kickback payments made in exchange for Hickman's cooperation to provide the buyer with preferential treatment and terms. ¶¶ 82-139.

The final scheme alleged involves Performance Sales & Consulting, LLC and its sole member, Kevin Miller, who are located in Florida. Raeford Farms alleges that, between 2011 and 2018, Hickman directed the payment of brokerage fees from Raeford Farms to Performance Sales in connection with the sale of premium chicken products. Performance Sales and Miller agreed with Hickman to pay Heritage Food Sales a kickback on any brokerage fees that Hickman directed Raeford Farms to pay Performance Sales. The commission payments to Performance Sales totaled approximately 20 percent of the amount that Performance Sales received from Raeford Farms as brokerage fees. Performance Sales sent Heritage Food Sales 69 checks that totaled more than $489,000, constituting kickback payments for the wrongful brokerage fees. Hickman also shared

Raeford Farms' confidential and proprietary information with these defendants. ¶¶ 140-153.

Raeford Farms alleges that these matters came to light after it filed a 2019 collection action in state court against Lance Poole and Group 7792, based generally on the alleged failure to pay certain shipping costs. As part of its investigation, Raeford Farms hired a certified fraud examiner, who discovered that Mr. Hickman had participated in various schemes designed to line his own pockets at the expense of Raeford Farms. Raeford Farms then filed its First Amended and Restated Complaint that expanded its allegations to substantially those described above. Defendants removed the case based on diversity jurisdiction. A default has been entered against Group 7792 and Poole, Docs. 21 & 22, but Raeford Farms has not yet filed a motion for default judgment. The other defendants have responded to the complaint with various motions, including the S&S Defendants' motion to sever that is before the court.

**Joinder and Severance**

Federal Rule of Civil Procedure 21 states: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Where severance is granted based on Rule 21, it "creates two separate actions or suits where previously there was but one." United States v. O'Neil, 709 F.2d 361, 368 (5th Cir. 1983). "Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions

notwithstanding the continued existence of unresolved claims in the other." Id.; see also Allied Elevator, Inc. v. E. Tex. State Bank, 965 F.2d 34, 36 (5th Cir. 1992).

Rule 21 does not itself set out a standard for its application, so "courts have looked to Rule 20 [of the Federal Rules of Civil Procedure] for guidance" as to whether severance is proper under Rule 21. Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 521 (5th Cir. 2010). Rule 20, which addresses the permissive joinder of parties, states with respect to defendants:

**(a) Persons Who May Join or Be Joined.**
\* \* \*
 **(2)** *Defendants.* Persons … may be joined in one action as defendants if:

**(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

**(B)** any question of law or fact common to all defendants will arise in the action.

**(3)** *Extent of Relief.* Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

**(b) Protective Measures.** The court may issue orders--including an order for separate trials--to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

"Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 86 S. Ct. 1130, 1138 (1966). However, even if the requirements for joinder are satisfied, "district courts have the

discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." Acevedo, 600 F.3d at 521 (internal citations omitted).

"The transaction and common question requirements prescribed by Rule 20(a) are not rigid tests." Wright, Miller & Kane, Federal Practice & Procedure, § 1653 (1986). "They are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." Id. The courts use a case-by-case approach, often looking for a logical relationship between the events and parties that is consistent with the philosophy of the rule to allow joinder that promotes judicial economy by permitting all reasonably related claims against different parties to be tried in a single proceeding. Id. "In a similar vein, language in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court." Id.

District courts in the Fifth Circuit have considered the following factors when deciding whether a claim should be severed under Rule 21: (1) whether the claims arose out of the same transaction or occurrence, (2) whether the claims present common questions of law or fact, (3) whether settlement or judicial economy would be promoted, (4) whether prejudice would be averted by severance, and (5) whether different witnesses and documentary proof are required. Offshore Rental Ltd. v. La. Scrap Int'l, 2019 WL 4942039, *2 (W.D. La. 2019) (Whitehurst, M.J.). The first two factors track the "two-

prong test" created by Rule 20. Thus, application of the five factors accounts for whether joinder was appropriate, but it also allows for the exercise of judicial discretion in instances where joinder was permissible but severance is warranted. Id.

A related way to address similar concerns is to order separate trials within the same case, as allowed by Fed. R. Civ. Pro. 42(b). The rule states: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." That approach does not result in discrete, independent suits. O'Neil, 709 F.2d at 368. No party has asked for that form of relief in this case.

**Analysis**

The parties debate whether the claims against the S&S Defendants arose out of the same transaction or occurrence as the claims against the other defendants, as well as whether the various claims present a common question of law or fact. There are certainly reasonable arguments on both sides of the issues, but the court finds that the elements that allow joinder are satisfied in this case given the flexible nature of those concepts and the generous "logical relationship" standard that is often employed.

The claims against the S&S Defendants are distinct from the claims against the other groups of defendants, given their scattered geographic locations and the lack of any allegations that the various groups of defendants conspired or worked with each other in any way. But the claims against each of the several defendants are nonetheless related in that members of the Hickman Defendants are an integral component of the claims against each group of defendants. That common factor results in a likelihood of overlapping proof

and the duplication of some testimony if separate trials were held. There are certainly aspects of the Hickman Defendants' actions that will be unique to the claims against each of the other defendant groups, but some of the same essential facts regarding the Hickman Defendants will be relevant to all claims.

A court reached a similar conclusion in DIRECTV, Inc. v. Vanryckeghem, 2004 WL 1794521 (E.D. La. 2004), in which a satellite television provider filed suit against six unrelated defendants who were alleged to have used electronic devices to wrongfully intercept television programming. The defendants were unrelated, but they each purchased their devices from the same vendor, and the causes of action were based on records and information obtained through an investigation of that vendor and its records. The court found that permissive joinder of the several defendants was proper. The court did go on to nevertheless order separate trials. But joinder was determined to be lawful. A similar situation is presented here, where an investigation of the Hickman Defendants uncovered multiple alleged fraud schemes that involved the otherwise unrelated defendants.

The next factor is whether settlement or judicial economy would be promoted. The judicial economy factor is uncertain. The court routinely manages cases in which there are multiple defendants and discovery is conducted in various locations, so keeping the case as one will not likely make the discovery and pretrial process more taxing on the court. If the claims against the S&S Defendants were severed, other defendants would likely request similar relief, with one case becoming three or even four. That might not diminish judicial economy, but it would certainly not help it by turning one case into several. As for

promoting settlement, no party has suggested that settlement would be more or less likely depending on whether severance of the S&S Defendants is granted.

The next factor is whether prejudice would be averted by severance. The S&S Defendants contend that they will suffer severe and unfair prejudice, economic and otherwise, if they are forced to proceed in this lawsuit with the other defendants. They argue that they could be forced to participate in completely irrelevant discovery, depositions, and other proceedings in Massachusetts, Louisiana, and Florida. But the court can alleviate that burden by, for example, directing the parties to organize discovery so that certain depositions will be identified as related only to the claims against certain defendants. If the deposition of an L&S employee is taken in Massachusetts that relates solely to the claims against that defendant, the S&S Defendants from Texas would not need to participate. If the S&S Defendants insist that they would need to participate in such depositions absent severance, that would indicate that the claims against the several groups of defendants are not so distinct as the S&S Defendants suggest.

The S&S Defendants also express concern that they could erroneously become responsible for damages caused by the Group 7792 Defendants because they share a common alleged solidary obligor. The S&S Defendants will be liable only for the damages they are proven to owe individually or solidarily with another defendant. If they go to trial along with the Group 7792 Defendants, the jury instructions and verdict form can be crafted to ensure that there is no erroneous attribution of fault. One court recently rejected a similar argument of jury confusion and prejudice in a joinder setting, noting that any potential

confusion can be remedied by appropriate jury instructions. Garza v. Phillips 66 Company, 2016 WL 1171004, *6 (M.D. La. 2016).

The S&S Defendants express concern that they could be exposed to prejudice due to evidence of fraudulent acts of the other defendants. They worry that there is no guarantee that evidence will not be conflated with unrelated claims or that the jury will not attribute Hickman's actions in one transaction to that of another, unrelated transaction. Similar concerns often arise in multi-defendant cases, and courts routinely give jury instructions to address such concerns.

Also relevant to the prejudice factor is what to do with the Hickman Defendants if severance were granted. Raeford Farms states that is would not oppose severance of the case into three cases so long as the Hickman Defendants were made defendants in each case. The Hickman Defendants filed a memorandum (Doc. 145) and strongly objected that this would amount to improper claims-splitting by Raeford Farms and would impose an undue burden on the Hickmans to defend three or four lawsuits (depending on whether the S&S Defendants and the Group 7792/Poole Defendants are placed in one suit) in which they would face discovery and other proceedings that would undoubtedly cover a lot of the same ground in each of the suits brought by the same plaintiff.

It might come to pass that the court decides that the best way to manage the litigation is to order separate trials for some of the defendants. At least some of the Hickman Defendants would likely need to be made defendants in each trial of claims with respect to which the Hickmans are alleged to have conspired with the other defendants and solidary liability is sought against them. If that happens, it would place an extra burden on the

Hickmans, and that burden would be a factor in the court's assessment of whether to order such separate trials. But by denying severance now, the court will spare the Hickman Defendants from the expense of what would likely become repetitive discovery in multiple lawsuits that present overlapping facts.

The final factor is whether different witnesses and documentary proof are required. There will certainly be differences in the proof presented against the S&S Defendants, as opposed to the other groups of defendants. But no matter how the claims are divided, there will be common elements of proof, related to the actions of the Hickman Defendants and how Raeford Farms conducts business, that are relevant to each claim. Thus, severance will not spare the parties and court from the presentation of much of the same or similar evidence in multiple cases.

All parties who briefed the severance issue have made reasonable arguments, and there is likely no perfect answer that would be completely fair in the eyes of every concerned party. After considering all of the relevant factors discussed above, as well as the other arguments set forth in the briefs, the undersigned has determined that the best exercise of the court's broad discretion is to deny severance and to proceed with discovery and other pretrial proceedings against all defendants in this civil action. The court will make reasonable efforts to manage and coordinate discovery in a way that reduces prejudice to the extent reasonably possible. And the court will continue to consider, as the case progresses, whether any separate trials are warranted as allowed by Rule 42(b). Motion practice and settlements may, of course, affect those issues and make some of the

procedural decisions less difficult as the case progresses. For these reasons, the S&S Defendants' Second motion to Sever (Doc. 141) is denied.

   THUS DONE AND SIGNED in Shreveport, Louisiana, this the 19th day of March, 2021.

Mark L. Hornsby
U.S. Magistrate Judge