UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HOUSE OF RAEFORD FARMS OF LOUISIANA, LLC | CIVIL ACTION NO. 19-271 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LANCE POOLE, ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion for judgment on the pleadings, filed by Defendants S&S Trading, James Baxter ("Baxter"), Roger Franklin ("Franklin"), and Donald Vaughn ("Vaughn") (collectively the "S&S Defendants"). Record Document 163. The S&S Defendants seek to dismiss three claims brought against them by the Plaintiff, House of Raeford: fraud, breach of fiduciary duty, and civil conspiracy, insofar as the conspiracy extends to any Defendant aside from William Ross Hickman. Plaintiff has responded to the motion, and the matter is now ripe for review. Based on the following reasons, the motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART.

## Background

This case has been brought against fifteen defendants, many of whom are unrelated to each other, and it encompasses several different alleged fraudulent schemes. This opinion will only address in detail the Defendants at issue in the instant motion.

House of Raeford is a poultry producer that operates poultry processing facilities. It sells chicken parts to market buyers through either annual contracts or through daily sales based on the current market price. Record Document 125, p. 5. There are two

1

types of chicken sales involved in the instant case: premium parts, which are the breasts and thighs, and chicken frames, which is what remains after the breasts, thighs, wings, and legs have been removed.

At all relevant times, Defendant William Ross Hickman ("Hickman") was the sales manager of Plaintiff's Arcadia, Louisiana facility. As the sales manager, Hickman "negotiated contracts for the sale of all poultry products on behalf of [Plaintiff], supervised the transportation and shipment departments in Arcadia, Louisiana, and sold any excess fresh and frozen commodity chicken on a daily basis." Record Document 125, p. 5. According to Plaintiff, in January of 2011, while acting as Plaintiff's sales manager, Hickman secretly formed his own company, Heritage Food Sales. Id. at 6. This company lies at the heart of many allegations in this case. Hickman's wife, Angela Hickman, managed the day-to-day activities of Heritage Food Sales, including drafting and cashing checks for the business, and her email account was used for business purposes. Id. at 8 & 21.

Heritage Food Sales acted as a broker, purchaser, and seller of chicken products that originally came from the Plaintiff. In broad terms, Hickman is alleged to have brokered deals with many of the Defendants in this case whereby the Defendant companies purchased chicken parts from the Plaintiff at beneficial pricing. In one scheme—the chicken frame scheme—the S&S Defendants, as well as Defendants Group 7792 and Lance Poole (the "Group 7792" Defendants), acted as pass-through entities for the sale of chicken frames, often never taking physical possession of the chicken, but rather purchasing it from Plaintiff (via Hickman) at a lower price and then reselling it to

Heritage Food Sales (via Hickman) at a higher price, with both the pass-through company and Hickman profiting from the deal. Hickman's scheme with S&S occurred between 2012 and 2017, and Hickman "subsequently replaced S&S Trading's status as a pass-through entity with Group 7792 and Poole in 2017." Id. at 10. Hickman's agreement with Group 7792/Poole was similar, but also included having House of Raeford pay for transportation costs, instead of the purchaser paying those costs.

The second scheme allegedly involved Defendant L&S Food Sales Corp and its principals Alan Singer ("Singer") and Hector Perez ("Perez"). This scheme occurred between 2011 and 2018. Hickman provided L&S with preferential pricing for chicken sales, and in return L&S paid Heritage Food Sales, i.e., Hickman, a "portion or percentage of each purchase it made" from Plaintiff. Id. at 21. That is, L&S made bribery or kickback payments in exchange for Hickman's "preferential treatment, favorable terms, and inside, confidential information . . . ." Id. at 23.

The third scheme is alleged against Defendant Performance Sales & Consulting LLC and its sole member, Kevin Miller ("Miller"). This scheme is a bit different than those described above. Between 2011 and 2018, Performance brokered the sale of Plaintiff's premium chicken products to buyers. Id. at 30; Record Document 139-1, p. 12. Plaintiff alleges that Hickman and Performance agreed that Performance would pay a kickback on any brokerage fees that Hickman directed Plaintiff to pay Performance. In other words, in exchange for receiving the brokerage agreements and brokerage fees, Defendants kicked back to Hickman a portion of the payment they received from Plaintiff. Plaintiff's assistant sales manager, Brian Whiteman ("Whiteman"), was also allegedly involved in this

scheme and profited from it. Record Document 125 at 6 & 42. Plaintiff avers that the Defendants paid Hickman roughly twenty percent of whatever brokerage fees they received from Plaintiff. Id. at 31. Hickman allegedly also shared Plaintiff's confidential and proprietary information with Performance.

The S&S Defendants now move for judgment on the pleadings, seeking the dismissal of Plaintiff's fraud claim, breach of fiduciary duty claim, and the conspiracy claim insofar as it alleges the S&S Defendants conspired with anyone other than Hickman himself. These requests will be examined in turn below.

## Law and Analysis

A.  Standard of Review

Rule 12(c) permits a party to move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "A motion brought pursuant to [Rule 12(c)] is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings." Hebert Abstract Co. v. Touchstone Properties, Ltd., 914 F.2d 74, 76 (5th Cir. 1990). Further, a party may raise a defense of failure to state a claim upon which relief can be granted in a 12(c) motion. Fed. R. Civ. P. 12(h)(2)(B).

The standard of review for a motion under Rule 12(c) is the same as the standard of review for a motion under Rule 12(b)(6). In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, a Plaintiff's complaint must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. In determining whether the Plaintiff has stated a plausible claim, the Court must construe the complaint in the light most favorable to the Plaintiff, see In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 210 (5th Cir. 2010), and accept as true all of the well-pleaded factual allegations in the complaint, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also In re Katrina Canal Breaches Litig., 495 F.3d at 205. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Thus, the Court does not have to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005).

B.  Fraud Claim

In prior rulings, the Court dismissed Plaintiff's fraud claims against Defendants L&S, Singer, Perez, Performance, and Miller. Record Documents 160 & 161. In so doing, the Court found that the Plaintiff was unable to establish the Defendants owed Plaintiff a duty to disclose, and thus Plaintiff was unable to satisfy the elements of fraud under Louisiana law. Plaintiff's fraud claims, including fraudulent misrepresentation and fraudulent concealment, were thus dismissed for failure to state a claim. Here, the S&S Defendants argue that ruling applies just as equally to the Plaintiff's fraud claims against it, and those claims must be dismissed, as well. Plaintiff does not dispute this contention, and in fact, concedes that the dismissal of these claims is warranted. Indeed, Plaintiff acknowledges that the "Court's prior rulings . . . similarly dictate the dismissal of any direct claims of

5

fraud against" the S&S Defendants. Record Document 173, p. 2. Therefore, for the same reasons set forth in the Court's prior rulings, the fraud claims against S&S, Baxter, Franklin, and Vaughn are dismissed.

C.     Breach of Fiduciary Duty

The S&S Defendants next seek to dismiss Plaintiff's claim of breach of fiduciary duty. In response, the Plaintiff explains that it has not alleged a breach of fiduciary claim against the S&S Defendants, and therefore there is nothing for the Court to dismiss. Rather, Hickman and Whiteman are the only two parties whom Plaintiff asserts breached a fiduciary duty. Because there is no breach of fiduciary claim alleged against the S&S Defendants, the motion to dismiss is denied as moot in that regard.

D.     Conspiracy Claim

Plaintiff's second amended complaint lodges a conspiracy claim against S&S, Vaughn, Baxter, Franklin, Hickman, Angela Hickman, Heritage Food Sales, and Whiteman. Record Document 125, pp. 35 & 36. The S&S Defendants seek to dismiss the conspiracy claim, insofar as it asserts that a conspiracy existed between the S&S Defendants and any "non-Hickman defendants."[1] Record Document 163-1, p. 6. Continuing, the S&S Defendants argue that because the Plaintiff has not "allege[d] an agreement or meeting of the minds between S&S Defendants and L&S, Singer, Perez, Performance, Miller, Angela Hickman, Whiteman, Group 7792, or Poole . . . [and the] only alleged agreement or

---

[1] While the S&S Defendants have been inconsistent about who specifically the "non-Hickman" Defendants are, here the Court understands that to mean any Defendant other than Hickman himself—that is, Angela Hickman, Heritage Food Sales, and Whiteman.

6

meeting of the minds is between Hickman and S&S Defendants, [then the] non-Hickman conspiracy claims must be dismissed." Id. at 7.

A review of the "cause of action" section of Plaintiff's complaint does not reveal that Plaintiff has actually alleged that the S&S Defendants conspired with L&S, Singer, Perez, Miller, Performance, Group 7792, and/or Poole. See Record Document 125, pp. 35 & 36. Instead, it alleges that the S&S Defendants, Hickman, Angela Hickman, Heritage Food Sales, and Whiteman are liable for civil conspiracy. Thus, the request to dismiss a conspiracy claim against the S&S Defendants that also involves L&S, Singer, Perez, Performance, and Miller is denied as moot, as such a conspiracy has not been alleged in the complaint.

As to a conspiracy involving both the S&S Defendants and the Group 7792 Defendants, the Court does not find the Plaintiff actually asserted, or intended to assert, such a claim. First, as set forth above, the cause of action section does not identify a conspiracy between these two groups of Defendants. In contrast, in the complaint's recitation of the facts, the Plaintiff stated that "S&S Trading, Group 7792, and Hickman conspired and agreed that S&S Trading and Group 7792 would buy chicken frames from Raeford Farms and then immediately resell the chicken frames to Hickman's company, Heritage Food Sales, at a higher amount than the pass-through entities originally paid to Raeford Farms." Record Document 125, p. 13. However, given the placement of this allegation in the fact section of the complaint and with an understanding of the surrounding context, including the claims subsequently set forth in the cause of action section of the complaint, the Court finds the aforesaid language was used (possibly

7

inartfully) to convey that the S&S Defendants and the Group 7792 Defendants, respectively, conspired with Hickman in his chicken frame scheme, not that they conspired with one another. Thus, the request to dismiss a conspiracy claim against the S&S Defendants that also involves the Group 7792 Defendants is denied as moot, as the Court concludes Plaintiff did not plead such an allegation.

The Court now turns to the request to dismiss the conspiracy claim insofar as it alleges an unlawful agreement between the S&S Defendants and Angela Hickman, Whiteman, and/or Heritage Food Sales. Louisiana Civil Code article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." La. Civ. Code art. 2324(A). In order to prove a conspiracy, a plaintiff must establish that: (1) there was an agreement to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in the plaintiff's injury; and (4) there was an agreement as to the intended outcome or result. Jeff Mercer, LLC v. State through Dep't of Transp. & Dev., 51,371 (La. App. 2 Cir. 6/7/17); 222 So. 3d 1017, 1024.

Civil "conspiracy by itself it not an actionable claim under Louisiana law." Crutcher-Tufts Res., Inc. v. Tufts, 2007-1556 (La. App. 4 Cir. 9/17/08); 992 So. 2d 1091, 1094. "The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part." Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co., 2014-0323 (La. App. 4 Cir. 10/1/14); 151 So. 3d 670, 676. "Civil conspiracy is not a substantive tort in Louisiana; the concept is relevant only to the distribution of quantum after liability is determined." New Orleans

Jazz & Heritage Found., Inc. v. Kirksey, 2009-1433 (La. App. 4 Cir. 5/26/10); 40 So. 3d 394, 408. "The actionable element of a claim of conspiracy pursuant to Article 2324 pertains to loss distribution and not substantive liability." Wooley v. Lucksinger, 2006-1140 (La. App. 1 Cir. 12/30/08); 14 So. 3d 311, 570, rev'd in part on other grounds, 2009-0571 (La. 4/1/11); 61 So. 3d 507.

Within a conspiracy, each actor is not required to commit the underlying illegal or tortious act. Rather, it is the agreement to commit those acts that makes one liable in a conspiracy, even if he did not perform the violative act(s) himself. That is, each actor need not be independently responsible for the commission of the underlying tort. "[N]othing in Article 2324 or the case literature requires that each co-conspirator equally participate in, let alone wholly commit, each element of the underlying intentional tort." Currier v. Entergy Servs., Inc., 2014 WL 4450360, *2 (E.D. La. Sept. 10, 2014); see Chrysler Credit Corp. v. Whitney Nat'l Bank, 51 F.3d 553, 557-58 (5th Cir. 1995) (explaining that because there was a stipulation that one party was liable for conversion of proceeds, the court did not need to determine whether the co-conspirator defendant was also liable for conversion; rather, it need only decide whether that defendant conspired with the guilty party to convert the funds).

Hence, Plaintiff must establish that each conspirator agreed with others to commit the tort and that one or more of the conspirators then committed the act, resulting in the Plaintiff's damages. Here, there are three different schemes alleged by the Plaintiff. The S&S Defendants were only involved in one scheme—the chicken frame scheme—and they were "replaced" in this scheme by Group 7792 and Poole. As the Magistrate Judge has

9

observed, "there is no allegation that the S&S Defendants and Group 7792/Poole conspired or coordinated together or had any form of relationship." Record Document 162, p. 3. The Court agrees with that conclusion.

At this stage of the proceedings, Plaintiff has sufficiently alleged the existence of a conspiracy between the S&S Defendants, Hickman, Angela Hickman, Heritage Food Sales, and Whiteman. The S&S Defendants' conspiracy liability will be confined to damages resulting from an agreement among the S&S Defendants, Hickman, Angela Hickman, Whiteman, and/or Heritage Food Sales to commit an illegal or tortious act. That is, their liability must stem from the particular scheme that involved the S&S Defendants. Said another way, the S&S Defendants cannot be held liable for the conspiratorial acts taken in furtherance of a scheme in which they were not involved. The Court cannot assess the merits of the conspiracy claim against these Defendants at this time. And, the Court reminds the parties that the conspiracy concept "is only relevant to the distribution of quantum after liability is determined." Wooley, 14 So. 3d at 570. With these parameters in mind, the Defendants' request to dismiss the conspiracy claim against all Defendants except Hickman is denied.

## Conclusion

For the foregoing reasons, the S&S Defendants' motion for judgment on the pleadings [Record Document 163] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **granted** insofar as it seeks the dismissal of the Plaintiff's fraud claims, including fraudulent misrepresentation and fraudulent concealment. It is **denied as moot** to the extent it seeks dismissal of a claim for breach of fiduciary duty, as Plaintiff did not allege

this claim against these Defendants.  And, the motion is **denied** to the extent that it seeks dismissal of the conspiracy claim against all Defendants except Hickman.

    **THUS DONE AND SIGNED** this 28th day of March, 2022.

                                                                    ELIZABETH ERNY FOOTE
                                                                    UNITED STATES DISTRICT JUDGE