UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HOUSE OF RAEFORD FARMS OF LOUISIANA LLC | CIVIL ACTION NO. 19-271 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LANCE POOLE, ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is an appeal of a ruling by Magistrate Judge Hornsby, which has been filed by Defendants S&S Trading, James Baxter ("Baxter"), Roger Franklin ("Franklin"), and Donald Vaughn ("Vaughn") (collectively the "S&S Defendants"). Record Document 171. The S&S Defendants object to the Magistrate Judge's Memorandum Ruling in which he denied their motion to sever. Record Document 162. The Plaintiff, House of Raeford, opposes the appeal [Record Document 175] and co-Defendants William Ross Hickman and Angela Hickman have also filed a response to the appeal [Record Document 174]. For the reasons set forth below, Magistrate Judge Hornsby's ruling denying the motion to sever is affirmed.

## Background

This case has been brought against fifteen defendants, many of whom are unrelated to each other, and it encompasses several different alleged fraudulent schemes. House of Raeford is a poultry producer that operates poultry processing facilities. It sells chicken parts to market buyers through either annual contracts or through daily sales based on the current market price. Record Document 125, p. 5. There are two types of

1

chicken sales involved in the instant case: premium parts, which are the breasts and thighs, and chicken frames, which is what remains after the breasts, thighs, wings, and legs have been removed.

At all relevant times, Defendant William Ross Hickman ("Hickman") was the sales manager of Plaintiff's Arcadia, Louisiana facility. As the sales manager, Hickman "negotiated contracts for the sale of all poultry products on behalf of [Plaintiff], supervised the transportation and shipment departments in Arcadia, Louisiana, and sold any excess fresh and frozen commodity chicken on a daily basis." Record Document 125, p. 5. According to Plaintiff, in January of 2011, while acting as Plaintiff's sales manager, Hickman secretly formed his own company, Heritage Food Sales. Id. at 6. This company lies at the heart of many allegations in this case. Hickman's wife, Angela Hickman, managed the day-to-day activities of Heritage Food Sales, including drafting and cashing checks for the business, and her email account was used for business purposes. Id. at 8 & 21.

Heritage Food Sales acted as a broker, purchaser, and seller of chicken products that originally came from the Plaintiff. In broad terms, Hickman is alleged to have brokered deals with many of the Defendants in this case whereby the Defendant companies purchased chicken parts from the Plaintiff at beneficial pricing. In one scheme—the chicken frame scheme—the S&S Defendants, as well as Defendants Group 7792 and Lance Poole (the "Group 7792" Defendants), acted as pass-through entities for the sale of chicken frames, often never taking physical possession of the chicken, but rather purchasing it from Plaintiff (via Hickman) at a lower price and then reselling it to

2

Heritage Food Sales (via Hickman) at a higher price, with both the pass-through company and Hickman profiting from the deal. Hickman's scheme with S&S occurred between 2012 and 2017, and Hickman "subsequently replaced S&S Trading's status as a pass-through entity with Group 7792 and Poole in 2017." Id. at 10. Hickman's agreement with Group 7792/Poole was similar, but also included having House of Raeford pay for transportation costs, instead of the purchaser paying those costs.

The second scheme allegedly involved Defendant L&S Food Sales Corp and its principals Alan Singer ("Singer") and Hector Perez ("Perez"). This scheme occurred between 2011 and 2018. Hickman provided L&S with preferential pricing for chicken sales, and in return L&S paid Heritage Food Sales, i.e., Hickman, a "portion or percentage of each purchase it made" from Plaintiff. Id. at 21. That is, L&S made bribery or kickback payments in exchange for Hickman's "preferential treatment, favorable terms, and inside, confidential information . . . ." Id. at 23.

The third scheme is alleged against Defendant Performance Sales & Consulting LLC and its sole member, Kevin Miller ("Miller"). This scheme is a bit different than those described above. Between 2011 and 2018, Performance brokered the sale of Plaintiff's premium chicken products to buyers. Id. at 30; Record Document 139-1, p. 12. Plaintiff alleges that Hickman and Performance agreed that Performance would pay a kickback on any brokerage fees that Hickman directed Plaintiff to pay Performance. In other words, in exchange for receiving the brokerage agreements and brokerage fees, Defendants kicked back to Hickman a portion of the payment they received from Plaintiff. Plaintiff's assistant sales manager, Brian Whiteman ("Whiteman"), was also allegedly involved in this

scheme and profited from it. Record Document 125 at 6 & 42. Plaintiff avers that the Defendants paid Hickman roughly twenty percent of whatever brokerage fees they received from Plaintiff. Id. at p. 31. Hickman allegedly also shared Plaintiff's confidential and proprietary information with Performance.

House of Raeford discovered these schemes when it pursued a collection action in state court against Group 7792 and Poole, which stemmed from those Defendants' failure to pay shipping costs. In investigating that case, a certified fraud examiner uncovered that Hickman had participated in the various schemes outlined above. House of Raeford amended its complaint to include those broader allegations, and the Defendants removed the suit to this Court on the basis of diversity jurisdiction. The motion to sever by the S&S Defendants soon followed.

## Law and Analysis

A.  Standard of Review.

Under Federal Rule of Civil Procedure 72(a), any party may appeal a magistrate judge's ruling on a non-dispositive matter to a district court judge. The decision by Magistrate Judge Hornsby to deny the S&S Defendants' motion to sever is a non-dispositive matter. When the district court is presented with an appeal, it must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). This Court will review the Magistrate Judge's findings of fact for clear error, which means that the "district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." Jefferson-Pilot Life Ins.

Co. v. Bellows, No. CIV.A. 3:02-CV-1992, 2003 WL 21501904, at *1 (N.D. Tex. June 24, 2003) (internal marks omitted). The Court reviews the Magistrate's legal conclusions *de novo* and can reverse if the ruling contains an error in its legal conclusions. See id. "[T]he abuse of discretion standard governs review of that vast area of . . . choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous." Id. (internal marks omitted).

B.   The Memorandum Ruling.

In his Memorandum Ruling denying the motion to sever, Magistrate Judge Hornsby thoroughly analyzed the appropriateness of joinder and severance under the Federal Rules of Civil Procedure. He explained that Rule 21, which gives the court the authority to "sever any claim against a party" in the event of misjoinder, does not provide a standard for its application. Thus, courts look to Rule 20 (permissive joinder of parties) for guidance on whether severance is proper under Rule 21. Rule 20 provides that defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

The Magistrate Judge instructed that when assessing whether a claim or party should be severed under Rule 20, courts within the Fifth Circuit often examine the following five factors: (1) whether the claims arise out of the same transaction or occurrence, (2) whether the claims present common questions of law or fact, (3) whether settlement or judicial economy would be promoted, (4) whether prejudice would be

averted by severance, and (5) whether different witnesses and documentary proof are required. The Magistrate found that, on balance, the factors weighed in favor of maintaining the S&S Defendants in the current action. As to the first two factors—whether the claims arise from the same transaction or occurrence and whether they present common questions of law and fact—Magistrate Judge Hornsby explained that when examining these factors, courts often look for a "logical relationship between the events and the parties," and courts are "inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expenses to the parties and to the court." Record Document 162, p. 8. Here, the court noted that even though the S&S Defendants are not alleged to have conspired with or worked with some of the other Defendants, they are alleged to have conspired with the "Hickman Defendants," that is, Hickman, Angela Hickman, Heritage Food Sales, and Whiteman. "[T]he members of the Hickman Defendants are an integral component of the claims against each group of defendants." Id. That commonality compels the conclusion that there is a "likelihood of overlapping proof and the duplication of some of the testimony if separate trials were held" as to each group of Defendants. Id. at 9-10.

As to the third factor of judicial economy and settlement, the Magistrate Judge concluded that severance of the S&S Defendants, and possibly other groups of Defendants, would make one case devolve into three or four separate cases, which would not promote judicial economy. He also noted that no party had suggested that settlement would be more or less likely if the S&S Defendants were severed from the case.

As to the fourth factor, whether severance would avert prejudice, the court rejected the S&S Defendants' argument that maintaining it in the current action would cause prejudice. It held that the discovery process could be organized in a way such that each Defendant group need only participate in the discovery related to their claims. In response to the argument that the S&S Defendants may be forced to pay damages caused by another Defendant, the Magistrate Judge observed that jury instructions and the verdict form could be properly crafted to cure this issue. Similarly, regarding the assertion that damning evidence against other defendants will essentially bleed over and prejudice the S&S Defendants, the court found that jury instructions are the proper way to address this concern. Significantly, the court held that severance of the S&S Defendants would result in unduly burdening the Hickman Defendants. That is because if the S&S Defendants are severed, House of Raeford requested that the Hickman Defendants be made Defendants in each case. Based on the allegations set forth in the amended complaint, this request seems reasonable. The Hickman Defendants, however, strongly object to being forced to defend multiple lawsuits, which would entail multiple overlapping discovery processes and trials that would address the same facts and issues. The court explained, "by denying severance now, the court will spare the Hickman Defendants from the expense of what would likely become repetitive discovery in multiple lawsuits that present overlapping facts." Id. at 13.

As to the final factor, the court observed that while there are differences in the proof presented against the S&S Defendants as opposed to the other Defendants, there are also common elements of proof regarding how Plaintiff conducts its business, as well

as the actions of the Hickman Defendants. Thus, separate trials would result in the presentation of similar evidence in multiple cases.

In summary, following a thorough exploration of the factors and with a full appreciation of the parties' competing interests, the Magistrate Judge concluded that

> After considering all of the relevant factors discussed above, as well as the other arguments set forth in the briefs, the undersigned has determined that the best exercise of the court's broad discretion is to deny severance and to proceed with discovery and other pretrial proceedings against all defendants in this civil action. The court will make reasonable efforts to manage and coordinate discovery in a way that reduces prejudice to the extent reasonably possible. And the court will continue to consider, as the case progresses, whether any separate trials are warranted as allowed by Rule 42(b).

Id. In doing so, he freely acknowledged that "there is likely no perfect answer that would be completely fair in the eyes of every concerned party." Id.

C.  The Appeal.

In their appeal of Magistrate Judge Hornsby's ruling, the S&S Defendants raise three points, which will be addressed below. The Court will not address any aspects of the Memorandum Ruling that have not been challenged and briefed in this appeal.

1.  Rule 20's language.

The S&S Defendants contend that neither the Memorandum Ruling, nor House of Raeford, has ever satisfied the language of Rule 20(a)(2) that "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). Plainly, Magistrate Judge Hornsby focused extensively on the latter inquiry, that is, whether the claims arise from the same series of transactions or

occurrences. However, the Defendants argue that the Magistrate Judge erroneously failed to consider the liability requirement of Rule 20—that House of Raeford has failed to assert claims against them and the other Defendants *jointly, severally, or in the alternative* and for that reason, Rule 20 has not been met. The Court disagrees and finds this requirement has been satisfied.

As an initial matter, the amended complaint very clearly alleges joint liability between the S&S Defendants and Hickman, Angela Hickman, Heritage Food Sales, and Whiteman. Nonetheless, the S&S Defendants dispute that the amended complaint sets forth several liability as between them and any remaining Defendants. The Court, however, finds that the amended complaint firmly establishes that the Plaintiff believes the S&S Defendants share several liability with the other groups of tortfeasors—the L&S Defendants, Performance and Miller, and Group 7792 and Poole—as the S&S Defendants did not participate in the schemes in which those groups of Defendants were involved. This conclusion is clear from a reading of the amended complaint and thus the Court rejects the S&S Defendants' argument.

The Court observes that in their pleadings, the S&S Defendants portray the federal rules and the governing jurisprudence as more conservative and restrictive than they actually are.[1] First, they claim that joinder is improper because the complaint fails to allege "any *shared* transaction or occurrence between the S&S Defendants and any non-Hickman defendant." Record Document 171, p. 4. However, they have cited to no legal

---

[1] In so doing, counsel for the S&S Defendants has potentially crossed the line from being a zealous advocate to displaying a lack of candor with the Court.

authority which would require defendants to participate in a "*shared* transaction or occurrence" to satisfy the joinder rules. And, here, the S&S Defendants have intentionally failed to acknowledge the latter part of Rule 20, which allows for a "*series* of transactions or occurrences;" as the S&S Defendants likely know, the facts do not have to be limited to one specific transaction in which all joint tortfeasors were involved.

Similarly, the Defendants contend that joinder is only appropriate if all Defendants' liability "come[s] from the same obligation" and is "part of a common thing." Id. at 5. Again, the Defendants cite to no legal authority for this proposition. They further attempt to narrowly construe Rule 20's parameters by focusing on the fact that they "did not share any duties" with other Defendants, they had no "distinct obligations under the umbrella of a common obligation," and the damages do not stem from "the same transaction or occurrence." Id. The Court rejects this unduly narrow and misplaced focus of the rule.

Indeed, as the Federal Circuit Court of Appeals has stated, "Rule 20 clearly contemplates joinder of claims arising from a 'series of transactions or occurrences'—a single transaction is not required." In re EMC Corp., 677 F.3d 1351, 1356 (Fed. Cir. 2012). More importantly, the court explained that "the fact that the defendants are independent actors does not preclude joinder as long as their actions are part of the 'same transaction, occurrence, or series of transactions or occurrences.'" Id. Indeed,

> [I]ndependent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action. The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. In other words, the defendants' allegedly [tortious] acts, which give rise to the individual claims . . . must *share* an aggregate of operative facts.

Id. at 1358 (emphasis in original); see also New York Life Ins. Co. v. Deshotel, 142 F.3d 873, 882 (5th Cir. 1998) ("[w]hile using the 'logical relationship' concept, [the] Circuit gives weight to whether the claim and counterclaim share an aggregate of operative facts.").

The Defendants' focus on several liability and their interpretation of Rule 20 fails to persuade the Court that the Magistrate Judge's findings were clearly erroneous or contrary to law.

2. Substantial Overlap in the Claims.

The S&S Defendants next argue that "there is no evidentiary overlap or relationship between the claims against the S&S Defendants and Group 7792 Defendants, much less any substantial evidentiary overlap." Record Document 171, p. 6. The S&S Defendants submit that the Magistrate Judge's ruling "failed to find that *substantial* evidentiary overlaps exists." Id. (emphasis in original). The Court disagrees.

Again, the Court must note that portions of the S&S Defendants' brief are disingenuous at best, and possibly intentionally misleading. For instance, citing Applewhite v. Reichhold Chemicals, Inc., 67 F.3d 571 (5th Cir. 1995), the S&S Defendants state: "Rule 20 requires that **all** of the plaintiff[]'s claims arise out of the same transaction or occurrence." Record Document 171, p. 5 (emphasis in original). Applewhite, however, did not stand for this proposition. Applewhite involved multiple plaintiffs with a personal injury action who attempted to join in a prior class action against one common defendant, the operator of a chemical manufacturing plant. 67 F.3d at 572–73. There, the district court had denied class certification and dismissed the complaint based on a blanket order

11

that all future suits against the defendant should be filed separately. Id. at 573. The Fifth Circuit remanded on this issue and directed the district court to consider whether the plaintiffs were properly joined in one action. Id. at 574. The quote cited by the Defendants here was taken out of context to imply that **all** of a single plaintiff's claims against multiple defendants must arise from the same transaction or occurrence. That is clearly neither the holding nor import of Applewhite. Applewhite, instead, merely explained that permissive joinder of plaintiffs is at their option, assuming they meet the requirements of Rule 20, which, in turn, demands that multiple plaintiffs' claims arise from the same transaction or occurrence and they have common issues of fact or law. Id. & n.11. Applewhite did not analyze, much less address, the extent of commonality required among multiple defendants. The S&S Defendants' suggestion otherwise is misleading.

Next, the Court is perplexed by the S&S Defendants' representation that "there will be no common evidence between the claims asserted against the S&S Defendants and the Group 7792 Defendants" or that there is no "relationship between the claims." Indeed, it is the Court's understanding that the Hickman Defendants initiated the chicken frame scheme with the S&S Defendants and perpetrated this scheme for approximately five years, and then the Group 7792 Defendants replaced S&S in this very scheme for one year. Thus, the assertion that there is "no common evidence" or any relationship among the claims is belied by the pleadings themselves. To put it simplistically, in order to establish and explain the chicken frame scheme to a jury, the bulk of the evidence will seemingly be "common" to both parties. To put it another way, there will be a substantial evidentiary overlap in the facts giving rise to the causes of action stemming from the

chicken frame scheme. The S&S Defendants' contention that they and Group 7792 had "discrete and separate contracts" and were not "privy to the other's contract," is quite frankly a red herring that fails to compel the conclusion that joinder was improper. There is a substantial overlap in the facts and claims sufficient to permit joinder of these Defendants under Rule 20.

3. Concerns of Settlement, Judicial Economy, or Prejudice.

The S&S Defendants' final assertion is that Rule 20(b) considerations, including settlement, judicial economy, and prejudice, warrant severance. Defendants do not devote serious attention to this challenge; indeed, the entirety of their argument is as follows:

> Here, the motion to sever established that neither settlement nor judicial economy is promoted by HORF's misjoinder of defendants and that undue prejudice would be averted by severing HORF's claims. HORF does not refute or oppose these arguments. Because HORF has not carried its burden to establish joinder and has also failed to negate or address S&S Defendants' well-founded arguments, the denial of the request to sever HORF's claims is clearly erroneous and contrary to law and should be set aside by the Court pursuant to Rule 72.

Record Document 171, p. 7. The S&S Defendants' motion does not scrutinize, much less address, any aspect of Magistrate Judge Hornsby's analysis on <u>any</u> of these issues, despite the fact that he devoted attention to each one in his ruling. The S&S Defendants' conclusory attack, devoid of argument, analysis, or other support, fails to persuade the Court that Judge Hornsby's conclusion was clearly erroneous or contrary to law. In fact, the Court agrees with his reasoning on each issue.

### Conclusion

As Magistrate Judge Hornsby stated in his ruling, "Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." Record Document 162, p. 7 (quoting United Mine Workers of Am. v. Gibbs, 86 S. Ct. 1130, 1138 (1966)). Here, Magistrate Judge Hornsby thoroughly explored the requirements of Rule 20 as well as the five factors that inform the determination of whether joinder is proper. The Court agrees with his well-reasoned analysis and concludes that the motion to sever was appropriately denied.

For the foregoing reasons, the Court does not find the Memorandum Ruling issued by Magistrate Judge Hornsby in which he denied the S&S Defendants' motion to sever was clearly erroneous or contrary to law. Accordingly, that decision is **AFFIRMED**.

**THUS DONE AND SIGNED** this 30th day of March, 2022.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE