# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| HOUSE OF RAEFORD FARMS OF LOUISIANA, LLC | CIVIL ACTION NO. 19-271 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LANCE POOLE, ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is motion to dismiss, filed by the Plaintiff, House of Raeford. Record Document 192.  In this motion, the Plaintiff seeks to dismiss the counterclaims brought against it by Defendants L&S Food Sales and Alan Singer (collectively "the L&S Defendants").[1] The L&S Defendants have opposed the motion, and the issue is ripe for review.  For the reasons set forth below, the motion to dismiss [Record Document 192] be and is hereby **granted**.

## Background

This case has been brought against fifteen defendants, many of whom are unrelated to each other, and it encompasses several different alleged fraudulent schemes. House of Raeford is a poultry producer that operates poultry processing facilities.  It sells chicken parts to market buyers through either annual contracts or through daily sales based on the current market price.  Record Document 125, p. 5.  There are two types of chicken sales involved in the instant case:  premium parts, which are the breasts and

---

[1] For purposes of this ruling, the term "L&S Defendants" does not include co-Defendant Hector Perez ("Perez"), who was sued along with L&S and Singer but did not join in the instant motion.

1

thighs, and chicken frames, which is what remains after the breasts, thighs, wings, and legs have been removed.

At all relevant times, Defendant William Ross Hickman ("Hickman") was the sales manager of Plaintiff's Arcadia, Louisiana facility.   As the sales manager, Hickman "negotiated contracts for the sale of all poultry products on behalf of [Plaintiff], supervised the transportation and shipment departments in Arcadia, Louisiana, and sold any excess fresh and frozen commodity chicken on a daily basis."   Record Document 125, p. 5. According to Plaintiff, in January of 2011, while acting as Plaintiff's sales manager, Hickman secretly formed his own company, Heritage Food Sales.   Id. at 6.   This company lies at the heart of many allegations in this case.   Hickman's wife, Angela Hickman, managed the day-to-day activities of Heritage Food Sales, including drafting and cashing checks for the business, and her email account was used for business purposes.   Id. at 8 & 21.

Heritage Food Sales acted as a broker, purchaser, and seller of chicken products that originally came from the Plaintiff.   In broad terms, Hickman is alleged to have brokered deals with many of the Defendants in this case whereby the Defendant companies purchased chicken parts from the Plaintiff at beneficial pricing.   In one scheme—the chicken frame scheme—the S&S Defendants, as well as Defendants Group 7792 and Lance Poole (the "Group 7792" Defendants), acted as pass-through entities for the sale of chicken frames, often never taking physical possession of the chicken, but rather purchasing it from Plaintiff (via Hickman) at a lower price and then reselling it to Heritage Food Sales (via Hickman) at a higher price, with both the pass-through company

2

and Hickman profiting from the deal.  Hickman's scheme with S&S occurred between 2012 and 2017, and Hickman "subsequently replaced S&S Trading's status as a pass-through entity with Group 7792 and Poole in 2017."  Id. at 10.  Hickman's agreement with Group 7792/Poole was similar, but also included having House of Raeford pay for transportation costs, instead of the purchaser paying those costs.

The second scheme allegedly involved Defendant L&S Food Sales Corp and its principals Alan Singer ("Singer") and Hector Perez ("Perez").   This scheme occurred between 2011 and 2018.  Hickman provided L&S with preferential pricing for chicken sales, and in return L&S paid Heritage Food Sales, i.e., Hickman, a "portion or percentage of each purchase it made" from Plaintiff.  Id. at 21. That is, L&S made bribery or kickback payments in exchange for Hickman's "preferential treatment, favorable terms, and inside, confidential information . . . ." Id. at 23.

The third scheme is alleged against Defendant Performance Sales & Consulting LLC and its sole member, Kevin Miller ("Miller").  This scheme is a bit different than those described above.  Between 2011 and 2018, Performance brokered the sale of Plaintiff's premium chicken products to buyers.  Id. at 30; Record Document 139-1, p. 12.  Plaintiff alleges that Hickman and Performance agreed that Performance would pay a kickback on any brokerage fees that Hickman directed Plaintiff to pay Performance.  In other words, in exchange for receiving the brokerage agreements and brokerage fees, Defendants kicked back to Hickman a portion of the payment they received from Plaintiff. Plaintiff's assistant sales manager, Brian Whiteman ("Whiteman"), was also allegedly involved in this scheme and profited from it.  Record Document 125 at 6 & 42.  Plaintiff avers that the

Defendants paid Hickman roughly twenty percent of whatever brokerage fees they received from Plaintiff.  Id. at p. 31.  Hickman allegedly also shared Plaintiff's confidential and proprietary information with Performance.

House of Raeford discovered these schemes when it pursued a collection action in state court against Group 7792 and Poole, which stemmed from those Defendants' failure to pay shipping costs.  In investigating that case, a certified fraud examiner uncovered that Hickman had participated in the various schemes outlined above.  House of Raeford amended its complaint to include those broader allegations, and the Defendants removed the suit to this Court on the basis of diversity jurisdiction.

The L&S Defendants were included as Defendants in the First Amended Complaint filed by House of Raeford on December 17, 2019.  On March 23, 2020, the L&S Defendants filed a motion to dismiss the First Amended Complaint, which was subsequently denied by Magistrate Judge Hornsby on June 8, 2020. Record Documents 87 & 124. A Second Amended Complaint was authorized by Magistrate Judge Hornsby and filed in the record on June 8, 2020 [Record Document 125]; the parties were provided actual notice of the allegations in the pleading on April 23, 2020 [Record Document 107].  On June 22, 2020, the L&S Defendants filed a motion to dismiss the Second Amended Complaint.  Record Document 136.  The motion was granted in part and denied in part in a ruling issued by the undersigned on March 18, 2021.  Record Document 160.  After seeking two extensions of time, the L&S Defendants filed an Answer on May 10, 2021; this answer included counterclaims against House of Raeford.  The L&S Defendants set forth the following causes of action against House of Raeford:  (1) breach of contract; (2) negligent

supervision over Hickman; and (3) violation of the Louisiana Unfair Trade Practices Act ("LUTPA").  In response, House of Raeford filed the instant motion to dismiss.

**Law and Analysis**

I.      Federal Rule of Civil Procedure 12(b)(6) Standard

Federal Rule of Civil Procedure 8 requires a short and plain statement of the claim showing the pleader is entitled to relief.  A complaint is not required to contain detailed factual allegations, however, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal marks and citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2008) (internal marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  See Iqbal, 556 U.S. at 678.  This plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  However, the complaint cannot be simply "unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  Id.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  See Twombly, 550 U.S. at 555-56.

As the Fifth Circuit has explained, in order to survive a 12(b)(6) motion, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Rios v. City of Del Rio, 444 F.3d 417, 420–21 (5th Cir. 2006) (internal marks and citation omitted).  Moreover,

> a statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief.  The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint.  Further, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.

Id. at 421 (internal marks and citations omitted).  A court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.  Neitzke v. Williams, 490 U.S. 319, 327 (1989).

II.   The Motion To Dismiss

Here, House of Raeford provides three reasons why the L&S Defendants' counterclaims should be dismissed.  First, it argues that the L&S Defendants' breach of contract claim is, in fact, a tort claim, and as such it is prescribed.  Second, it contends that even if the breach of contract claim is not prescribed, the pleadings fail to state a claim for relief under Rule 12(b)(6).  Third, it asserts that the claims of negligent supervision and LUTPA violations are prescribed.

Although prescription is an affirmative defense, a Rule 12(b)(6) motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint. Potier v. JBS Liberty Sec., Inc., No. 6:13-CV-00789, 2014 WL 5449726, *3

(W.D. La. Oct. 24, 2014).  Therefore, "[a] Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense."  Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977).

Under the Erie doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817 (1938).  In the instant case, it is undisputed that Louisiana law applies to the L&S Defendants' causes of action.  When the diversity court employs the state-law prescriptive period, "any coordinate state-law tolling rules are also borrowed."  Dugas v. City of Ville Platte, No. 6:17-CV-00337, 2017 WL 6521660, at *5 (W.D. La. Nov. 17, 2017), report and recommendation adopted, No. 6:17-CV-00337, 2017 WL 6521148 (W.D. La. Dec. 19, 2017); see also Gartrell v. Gaylor, 981 F.2d 254, 257 (5th Cir. 1993).

A.    Breach of Contract (Count I)

The L&S Defendants have filed a cause of action against House of Raeford for breach of contract.  House of Raeford contends this is, in fact, a tort claim that is prescribed.  Under Louisiana law, "[a]n action in tort is governed by the prescriptive period of one year while an action on a contract is governed by the ten year prescriptive period for personal actions."  Roger v. Dufrene, 613 So. 2d 947, 948 (La. 1993); La. Civ. Code arts. 3492 & 3499.[2]  "The proper prescriptive period to be applied in any action depends

---

[2] Here, although the L&S Defendants argue they have properly alleged a breach of contract cause of action, they do not try to employ the ten-year prescriptive period for contracts.  Presumably, this is because the ten-year period from the making of each contract would have already prescribed when they filed their counterclaim.  Instead, they argue that the applicable prescriptive period is five years, which is the term that governs relatively null contracts.  This will be discussed separately below.

upon the nature of the cause of action. It is the nature of the duty breached that should determine whether the action is in tort or in contract." Id.; see DePhillips v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par., 2019-01496 (La. 7/9/20); —So. 3d.—; 2020 WL 3867212, *4 ("we must examine the nature of the duty breached in order to determine whether the action is 'contractual,' falling within article 3499, or 'delictual,' falling within article 3492."). Therefore, the "label of the cause of action" does not determine the governing prescriptive periods, but rather the court looks to the "nature of the transaction and the underlying basis of the claim." Copeland v. Wasserstein, Perella & Co., 278 F.3d 472, 479 (5th Cir. 2002) (internal marks omitted).

The Louisiana Supreme Court has instructed that the "classic distinction" between contract claims and tort claims "is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons." DePhillips, 2020 WL at *4. "Even when tortfeasor and victim are bound by a contract, courts usually apply the delictual prescription to actions that are really grounded in tort." Richard v. Wal-Mart Stores, Inc., 559 F.3d 341, 345 (5th Cir. 2009) (quoting Trinity Universal Ins. Co. v. Horton, 33,157 (La. App. 2 Cir. 4/5/00); 756 So. 2d 637, 638). "It is a basic precept of Louisiana law that where an action arises out of "the breach of duty as imposed by law, the damages arose ex delicto, and [are] extinguished by the prescription of one year.' " DePhillips, 2020 WL at *4 (quoting Lagrone v. Kansas City S. Ry. Co., 102 So. 669, 670 (La. 1925) (emphasis in original)). Furthermore, "[e]ven when a contract exists, unless a specific contract provision is breached, Louisiana treats the action as tort." Richard, 559 F.3d at 345; see Loew's, Inc.

v. Don George, Inc., 110 So. 2d 553, 557-58 (La. 1959) ("There are, in certain relationships, duties imposed by law, and a failure to perform these obligations is considered as a tort though the relationships themselves may be created by contract encompassing the same subject.") (citation omitted).

Here, the L&S Defendants argue they have alleged a contract, not a tort, claim against House of Raeford.  They assert that House of Raeford gave Hickman authority to manage the L&S account, which included negotiating and entering into contracts.  Record Document 188, p. 24.  Because House of Raeford knew that L&S believed House of Raeford's chicken product was superior to its competitors, House of Raeford "saw an opportunity to wrongfully extort money from L&S." Id. at 26.  In 2011, the two companies entered into a new pricing model under which L&S claims that it had to pay "increased market price[s] from industry collusion for chicken products,[3] plus additional amounts with no additional consideration" provided by House of Raeford.  Id.  If L&S refused to pay the "additional amounts" that were in excess of the contract, Hickman "threatened not to perform" under the current contracts or enter into any future contracts.  Id.  Thus, there was a contract price set for the sale of chicken, and then Hickman demanded L&S pay him additional sums of money in order to ensure he continued to perform House of Raeford's contractual obligations.  The L&S Defendants use the terms "duress and extortion" to describe how House of Raeford gained value from L&S "through the use of threats . . . ." Id. at 27.  They also represent that House of Raeford "intended by its threats to coerce a payment and performance that it could not have secured through lawful means . . . ." Id.

---

[3] This allegation has no relevance to the instant suit.

Even though the cause of action was borne out of a contractual relationship, the Court finds that this alleged conduct sounds in tort, not contract.  Indeed, the L&S Defendants themselves have described their injuries as stemming from extortion,[4] coercion, threats, and acts taken under duress.  The obligation not to extort, unlawfully coerce, threaten, or impose duress is a general duty created by law, not a specific obligation contractually assumed by the parties.  Here, the additional payments demanded by Hickman—or, kickbacks, as House of Raeford describes them—unquestionably were not part of the parties' contracts.  The L&S Defendants concede these payments were not included in their various contracts with House of Raeford, and they admit these payments were made in response to Hickman's threats to cut off performance.  As such, the L&S Defendants' injury stems from a tort, not a breach of their contracts with House of Raeford.  See Dietz v. Dietz, 2009 WL 2707402, *11-12 (W.D. La. Aug. 27, 2009) (treating extortion claim as a tort); Smith v. Houston Indep. Sch. Dist., 229 F. Supp. 3d 571, 577-78 (S.D. Tex. 2017) (treating extortion claim as an intentional tort) (abrogated on other grounds). Accordingly, the Court concludes that Count I of L&S's counterclaim for breach of contract is actually a tort in nature and is subject to a one-year delictual prescriptive period.

For torts, prescription "commences to run from the day injury or damage is sustained."  La. Civ. Code art. 3492.  "Damage is considered to have been sustained, within the meaning of [article] 3492, only when it has manifested itself with sufficient certainty to support accrual of a cause of action."  Blevins v. Long Trusts, 49,605 (La. App.

---

[4] Louisiana criminal law defines extortion as "the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description."  La. R.S. § 14:66(A).

2 Cir. 2/26/15); 162 So. 3d 500, 507.[5]   The torts described by the L&S Defendants occurred between 2011 and 2018, which means the latest date a tort occurred was on December 31, 2018.   Because the L&S Defendants were aware of the torts as they occurred, as they stemmed from demands for payment in excess of each individual contract, the claims prescribed by December 31, 2019.   The L&S Defendants filed their counterclaim, however, on May 10, 2021, nearly a year and a half later; as such, it is time-barred unless an exception to prescription applies.

### 1.   Relative Nullity

While the Court has already determined that the L&S Defendants' breach of contract claim is actually a tort claim in nature, it will nonetheless address an alternative prescriptive theory they wished to invoke.   Though purportedly bringing a breach of contract claim against House of Raeford, the L&S Defendants attempted to borrow the five-year prescriptive period that applies to nullity of contracts under Louisiana Civil Code article 2031.   That provision states:

> A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.

> Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative.

---

[5] "Ignorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm which delays commencement of prescription.  Proof of a cause of action against a particular defendant is not required to commence the running of prescription; rather, simply knowledge, actual or constructive, sufficient to put a reasonable person on guard to call for inquiry is enough to begin the running of prescription."  Alvarez v. Se. Com. Cleaning, 13-657 (La. App. 5 Cir. 2/26/14); 136 So. 3d 329, 337 (internal citations omitted).

La. Civ. Code art. 2031.  Article 2031 thus means that a party's consent may be vitiated by error, fraud, or duress, which allows the affected party five years to annul the relatively null contract.  Hawkins v. Willow Inc., 15-71 (La. App. 5 Cir. 11/19/15); 181 So. 3d 210, 217.

In the instant case, the L&S Defendants submit that because they did not know Hickman was acting without House of Raeford's knowledge during the years they were contracting with him, it "follows" that they "did not give free consent at the time each of these contracts was made."  Record Document 197, pp. 10-11.  The five-year prescriptive term would then be beneficial to the L&S Defendants because they contend the period begins to run only when they knew or should have known of Hickman's wrongful acts, which in this case, they aver allows them until April 23, 2025 to bring their claims.[6]  This argument is unavailing.

First, the L&S Defendants have provided no legal analysis or legal authority to support this position.  Second, the Court has already determined that this claim sounds in tort, not contract.  Third, the L&S Defendants' argument is foreclosed by article 2031 itself. Indeed, "a relative nullity may be invoked only by those persons for whose interest the ground for nullity was established."  La. Civ. Code art. 2031.  The concept is designed "to protect the parties to a contract from being forced to honor contracts which they did not enter into freely."  Rowan v. Town of Arnaudville, 2002-0882 (La. App. 3 Cir. 12/11/02); 832 So. 2d 1185, 1190.  The rule's language is clear, and the L&S Defendants have not

---

[6] The L&S Defendants allege that the Second Amended Complaint, filed on April 23, 2020, provided them with actual notice of Hickman's conduct.

established that they belong to the class in whose favor the law extends a remedy.  Said another way, that the party on one side of the contract (Hickman) acted without authority does not vitiate the consent given by the party on the other side of the contract (L&S). L&S's consent is unaffected by whether or not Hickman exceeded the scope of his authority.  The L&S Defendants cannot annul the contracts based on Hickman's bad acts vis-à-vis his employer.  Rather, House of Raeford is the only party who could invoke the possible relative nullity.

B.     LUTPA and Negligent Supervision (Counts II and III)

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. R.S. § 51:1405.  LUTPA is governed by a one-year prescriptive period. La. R.S. § 51:1409(E).  Similarly, a one-year prescriptive term governs a claim of negligent supervision.  Irby v. Mancuso, 2016-78 (La. App. 3 Cir. 9/28/16); 201 So. 3d 413, 417.  "This prescription commences to run from the day injury or damage is sustained." Gaines v. Bruscato, 30,340 (La. App. 2 Cir. 4/8/98); 712 So. 2d 552, 557.  Here, in opposing House of Raeford's motion to dismiss, the L&S Defendants devoted no individualized attention to whether their claims of LUTPA violations and negligent supervision are prescribed.   That is, outside of their argument that prescription was interrupted, which is addressed separately below, the Defendants left these two claims largely unaddressed.  Without any contrary information or analysis from the L&S Defendants, the Court finds that for the reasons stated above, both of these causes of action are governed by a one-year prescriptive period and were prescribed before the counterclaim was filed in May of 2021.

C.      Exceptions to Prescription

Because it has been established that more than one year has passed between the alleged torts and the filing of the lawsuit, the burden is on the L&S Defendants to prove an exception to prescription.  Eldredge v. Martin Marietta Corp., 207 F.3d 737, 743 (5th Cir. 2000); Blevins, 162 So. 3d at 507. They must establish "either suspension, interruption, or some exception to prescription, utilizing one of any number of legal constructs including but not limited to the doctrine of contra non valentem and the theory of continuing tort."  Terrebonne Par. Sch. Bd. v. Mobil Oil Corp., 310 F.3d 870, 877 (5th Cir. 2002).  Because the court is sitting in diversity, it must give effect to any applicable state-law tolling provisions.

In general, prescription is interrupted "when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue." La. Civ. Code art. 3462.  When prescription is interrupted, the time that has run is not counted; it begins to run anew from the last day of interruption.  La. Civ. Code art. 3466;  Ansardi v. La. Citizens Prop. Ins. Corp., 2011-1717 (La. App. 4 Cir. 3/1/13); 111 So. 3d 460, 471–72.  Suspension of prescription differs from interruption, in that the prescriptive clock is not reset and begins to run again after the period of suspension concludes.  Id.  The "interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs."  La. Civ. Code art. 1799; Coston v. Seo, 2012-0216 (La. App. 4 Cir. 8/15/12); 99 So. 3d 83, 87.

The L&S Defendants assert that prescription was interrupted under two theories: (1) House of Raeford's amended complaint in December of 2019 interrupted prescription

as to their counterclaim and (2) the doctrine of contra non valentem.  These will be discussed in turn.

### 1.    Interruption of prescription by the amended complaint

As set forth above, under Louisiana law prescription is interrupted when the obligee brings suit against the obligor in a court of competent jurisdiction and venue.  La. Civ. Code art. 3462.  In the instant case, the L&S Defendants submit that when House of Raeford filed its amended complaint in December of 2019 wherein it asserted claims against them, that complaint interrupted prescription under article 3462, thus rendering their counterclaim timely filed.  Indeed, they state, "the prescription periods on any claims that L&S Food has asserted or could assert in this action were interrupted by the filing of the First Amended Complaint . . . [because] they arose from the same transaction or occurrence as the HORF's claims.  There is no reason that suspension under Article 3462 should not apply with equal force to the present circumstance."   Record Document 197, p. 12.  The Court observes that the L&S Defendants have cited no authority for this proposition; for that reason, coupled with the analysis set forth below, they have failed to carry their burden on this issue.

In Louviere v. Shell Oil Company, the Louisiana Supreme Court instructed that "[t]he filing by one party of a suit to recover his damages usually does not affect the running of prescription against other parties who sustained separate damages in the same accident."  440 So. 2d 93, 95 (La. 1983).  Further, "when several parties share a single cause of action . . ., suit by one interrupts prescription as to all.  However, when a suit by a second party states a different cause of action than the suit by the first party, although

each cause of action is based in part on common facts, the first suit does not interrupt prescription as to the subsequent cause of action." Id. at 96.  Here, notwithstanding that the causes of action arise from the same set of facts (Hickman's alleged schemes with the various Defendants), the L&S Defendants' claims of breach of contract, negligent supervision, and LUTPA violations are distinct from the causes of action brought forth in the Plaintiff's amended complaint filed on December 17, 2019.  Accordingly, that amended complaint did not interrupt prescription for the L&S Defendants' counterclaim.  See also Stamps v. Canal Indem. Ins., 2009-1961 (La. App. 1 Cir. 3/1/10); 35 So. 3d 1127 (filing of complaint did not automatically interrupt prescription as to all claims that may later by brought by any of the parties); Vanderbrook v. Jean, 2009-1744 (La. App. 1 Cir. 9/13/10); 2010 WL 3533292, *4 (defendant's crossclaim prescribed where the defendant failed to timely assert any claim against the other named co-defendants).

Moreover, the Louisiana First Circuit Court of Appeal directly foreclosed the very argument that the L&S Defendants advance in this case.  In Vanderbrook v. Jean, it held:

> Plaintiffs contend that the filing of their main demand asserting that all named defendants were jointly and/or solidary liable interrupted prescription in favor of all claims between all the parties. However,  . . . [t]o read these provisions so broadly would extend the concept of interruption of prescription to the point that virtually all claims would be imprescriptable and would render [article] 1067 meaningless.

Vanderbrook, 2010 WL at *5.  The Court does not find that House of Raeford's amended complaint stopped the prescriptive clock such that it rendered the L&S Defendants' counterclaims timely.

2.      Prescription exception for incidental demands

As set forth above, delictual actions are generally subject to a one-year prescriptive period.   However, Louisiana Code of Civil Procedure article 1067 creates a limited exception for incidental demands. It provides:

> An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of main demand or in the case of a third party defendant within ninety days from service of process of the third party demand.

La. Civ. Code art. 1067.[7]  A cross-claim is classified as an incidental demand.  <u>Vanderbrook</u>, 2010 WL at *4.  This provision is of no benefit to the L&S Defendants, however.[8]  They satisfy the first element, in that their counterclaim was not barred at the time the main demand was filed.  That is, the amended complaint was filed on December 17, 2019, and their claims arguably prescribed on December 31, 2019.[9]   However, the second element is more troublesome, in that it requires the L&S Defendants to have filed their

---

[7] This code article itself bolsters the Court's prior conclusion that the filing of a complaint does not automatically interrupt prescription on crossclaims.

[8] The L&S Defendants did not argue this exception would be applicable to them, but out of an abundance of caution, the Court will evaluate it.

[9] The Court understands that prescription may not begin to run until the injured party knows or should know they have a cause of action.  <u>See</u> <u>Cole v. Celotex Corp.</u>, 620 So. 2d 1154, 1156 (La. 1993) ("prescription commences to run from the day injury or damage is sustained.  Damage is considered to have been sustained . . . only when it has manifested itself with sufficient certainty to support accrual of a cause of action.").   The L&S Defendants allege that they received actual notice of Hickman's conduct when the Second Amended Complaint was filed on April 23, 2020.  Assuming *arguendo* that they are correct, that could not delay the start of the prescriptive start on their "breach of contract," <u>i.e.</u> tort, claims for the reasons set forth above.  Because all of the L&S Defendants' claims are facially prescribed, it is their burden to prove an exception applies to interrupt or suspend prescription for *each* claim.  The onus is on them to identify the date when each cause of action accrued.  They have failed to carry their burden.

counterclaims within ninety days of service of process of the amended complaint.  Here, to be deemed timely, that means the counterclaim had to be filed by May 4, 2020, which is ninety days from the date of service on February 3, 2020.  Unfortunately for the L&S Defendants, their counterclaim was not filed until May 10, 2021, which means this theory is unavailing to them.  Even if the Court used the date of the Second Amended Complaint on April 23, 2020, the counterclaim would still be untimely under this provision.

>3.    Contra non valentem

The L&S Defendants' final argument to save them from prescription invokes the theory of contra non valentem.  "*Contra non valentem non currit praescriptio* means that prescription does not run against a person who could not bring his suit."  Wells v. Zadeck, 2011-1232 (La. 3/30/12); 89 So. 3d 1145, 1150.  This is Louisiana's general rule for tolling and it allows prescription to be tolled or suspended when the plaintiff is "effectually prevented from enforcing his rights for reasons external to his own will."  Wimberly v. Gatch, 635 So. 2d 206, 211 (La. 1994).

The Louisiana Supreme Court "has recognized that the doctrine of contra non valentem is used to soften the occasional harshness of prescriptive statutes."  Wells, 89 So. 3d at 1150.   There are four recognized circumstances under which contra non valentem may be applied to prevent prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. These categories allow the

18

> courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled.

Id. (internal marks omitted).  The benefits of contra non valentem "are only extended up to the time that the plaintiff has actual or constructive knowledge" of the tortious act. Daigle v. McCarthy, 444 F. Supp. 2d 705, 711 (W.D. La. 2006).  "[T]he doctrine of contra non valentem applies only in exceptional circumstances and must be strictly construed." Vanderbrook, 2010 WL at *6.  Importantly, this doctrine "does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so." Terrebonne Par. Sch. Bd., 310 F.3d at 885.

Invoking the doctrine of contra non valentem here, the L&S Defendants claim that there were "numerous procedural events" that constituted both "legal causes and conditions . . . which prevented L&S Food from filing its claims until the day it did."  Record Document 197, p. 13.  Specifically, they contend that they pursued two motions to dismiss (one as to each amended complaint) instead of filing an answer, and that the time for them to file their counterclaim was "delayed."  Id.  They point out that the Court did not rule on their motion to dismiss the second amended complaint until March 18, 2021. Presumably, then, they are relying on the second exception for contra non valentem, that is, when administrative or contractual constraints delay the party's action.   Here, the L&S Defendants do not identify whether they believe contra non valentem purportedly interrupted prescription so that the clock started anew or whether it suspended prescription for a period of time, nor do they identify on what dates the clock started and stopped, or how long they allegedly had to file their counterclaim after the Court's ruling

denying the motion to dismiss.  It is unnecessary for the Court to resolve these inquiries, however, because the underlying premise itself is flawed.

While there have been delays in briefing and issuing rulings on the various motions in this case, the L&S Defendants have failed to explain how these delays created a barrier to their seeking to present their claims to the Court.  The Court is unconvinced that the prescriptive period was stopped while they waited on the undersigned to rule on the motion to dismiss.  Indeed, the Court's actions had no bearing on their ability to set forth these claims in order to preserve them.  The L&S Defendants do not offer any legal authority to support their theory, and the Court has been unable to locate any jurisprudence that would support such a claim.  To the contrary, there is Louisiana case law that directly rejects the theory advanced here by the L&S Defendants.  In Commercial Union Ins. Co. v. CBC Temporary Staffing Services, Inc., the defendant argued that its reconventional demand was timely even though it was filed more than a year after the main demand, positing that the delay stemming from the court's ruling on its exceptions did not count towards prescription, and thus the reconventional demand was not prescribed when it was filed.  2003-0480 (La. App. 1 Cir. 11/3/04); 897 So. 2d 652, 654. The Louisiana First Circuit Court of Appeal held the defendant's decision not to file a reconventional demand while it waited on the district court to rule on its exceptions did not stop the prescriptive clock, and thus the claim was prescribed.  Id.  This conclusion applies with equal force to the L&S Defendants.  They were perfectly able to bring their claims, yet they failed or refused to do so.  Contra non valentem will not act to suspend prescription under these circumstances.  Accordingly, their claims are time-barred.

D.     Offset.

Lastly, the L&S Defendants contend that their counterclaims cannot be dismissed because they are offsets, which under Louisiana law can be used as a defense to the Plaintiff's claims.  The L&S Defendants cite Louisiana Code of Civil Procedure article 424 in support of their argument.  This article provides in pertinent part:

> A person who has a right to enforce an obligation also has a right to use his cause of action as a defense.

> Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff.

La. Code Civ. P. art. 424.  Even though the counterclaims may be prescribed, the L&S Defendants submit they can still use them as the basis for an offset, and thus the claims cannot be dismissed.  House of Raeford responds that the L&S Defendants can only use the offset theory as a defense, not as an affirmative counterclaim against the Plaintiff.  Further, it argues that under Louisiana Civil Code article 1894, the L&S Defendants are prohibited from taking advantage of any offset defense because those "who have acted in bad faith are not allowed" to invoke this equitable remedy.  Plainly, whether the L&S Defendants acted in bad faith is a fact question that cannot be resolved by the Court.  The counterclaims are dismissed.  Even if the underlying obligations are prescribed, however, the L&S Defendants can assert offset as a defense, but only to the extent permitted by application of the governing law to the facts of this case.

## **Conclusion**

For the foregoing reasons, the Court finds that the L&S Defendants' counterclaims of breach of contract, negligent supervision, and LUTPA violations are all prescribed. House of Raeford's motion to dismiss these counterclaims [Record Document 192] is **GRANTED** and the counterclaims are dismissed with prejudice.

**THUS DONE AND SIGNED** this 31st day of March, 2022.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE